UNITED STATES of America,
Plaintiff-Appellee,

v.

John K. ELLIOTT, Defendant-Appellant.

No. 81–1402.

United States Court of Appeals,
Tenth Circuit.

Sept. 27, 1982.

---

William Sheffield, Santa Ana, Cal. (James B. Andres, Santa Ana, Cal., with him on the brief), for defendant-appellant.

Tena Campbell, Asst. U.S. Atty., Salt Lake City, Utah (Brent D. Ward, U.S. Atty., and Samuel Alba, Asst. U.S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, HOLLOWAY and BARRETT, Circuit Judges.

PER CURIAM.

The appellant, John K. Elliott, appeals his conviction under 15 U.S.C. § 645(a) for making a false statement to the Small Business Administration. On appeal the defendant argues that the submission of a sight draft or check signed by a third party—an individual—is not a "statement" under 15 U.S.C. § 645(a), and that the indictment returned is insufficient because it does not allege conduct which is proscribed by the statute.

The Small Business Administration approved and the Bank of Salt Lake funded a loan to the defendant for $275,000. The defendant pledged as collateral both real and personal property. About two years later the defendant was unable to make regular payment on the loan, the loan was placed in liquidation, and the defendant tendered "peaceful possession" of all pledged collateral to the Small Business Administration. Later the same month the defendant submitted a check payable to the Bank of Salt Lake and to the Small Business Administration in the amount of $257,000. The check on a draft form was drawn on Compagnie de Gestion et D'Assistance (COGESA) of Switzerland and was signed only by an individual, Hugh Winchester. The check bore the notation "Final payoff on buildings." It was received for collection, sent through banking channels, and was returned unpaid. Defendant's name did not appear on the check.

The indictment charges that the defendant:

"did knowingly make and cause to be made a materially false statement in connection with the pay-off of a loan ... by the Small Business Administration for the purpose of influencing the action of the Small Business Administration to defer ... foreclosure and liquidation of the collateral pledged ... in that ... [he] submitted and caused to be submitted a payment on said loan what purported to be a check drawn on ... (COGESA) ... made payable to Bank of Salt Lake/S.B.A. ... whereas ... [he] then well knew, the above-described check was fictitious and worthless ...."

The indictment is based on 15 U.S.C. § 645(a) which prohibits in pertinent part: "[Making] any statement knowing it to be false ... for the purpose of obtaining for himself ... any loan, or extension thereof by renewal, deferment of action, or otherwise, ... or for the purpose of influencing in any way the action of the [Small Business] Administration ...."

At trial the defendant moved to dismiss the indictment on the ground that it was fatally deficient because it did not allege conduct which was prohibited by 15 U.S.C. § 645(a). The defendant argued that since the indictment did not allege the substance of any purported false statement made by the defendant 15 U.S.C. § 645(a) was not violated. The trial court denied the defendant's motion finding that the intentional submission of a bad check of a third party could constitute a "false statement" under 15 U.S.C. § 645(a). We must reverse because the indictment was not sufficient to charge an offense.

The traditional criteria for testing the sufficiency of an indictment are whether it contains the elements of the offense

charged and apprises the accused of the nature of the charge so as to enable him to prepare a defense and to plead the judgment in bar. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. These principles are embodied in Fed. R. Crim. P. 7(c)(1) which requires that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Thus, the indictment should lay out the elements of the charge and the factual circumstances underlying them. *United States v. Radetsky,* 535 F.2d 556 (10th Cir.); *Mims v. United States,* 332 F.2d 944 (10th Cir.).

■ The indictment here concerned was cast in the language of 15 U.S.C. § 645(a) and assumes that the delivery of the check constitutes a "statement" under the statute. Thus the indictment alleges that the defendant presented as a payment on a loan a check signed by a third party knowing it to be worthless. Without further allegations in the indictment a violation of § 645(a) was not described as the conduct alleged did not constitute the making of a statement.

The Supreme Court recently construed language in 18 U.S.C. § 1014, which is similar in content and purpose to 15 U.S.C. § 645(a). In *Williams v. United States,* —— U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767, the Supreme Court considered checks signed by the defendant and held that a "bad check" is not a false statement under 18 U.S.C. § 1014. The Court in *Williams* stated:

"Although petitioner deposited several checks that were not supported by sufficient funds, that course of conduct did not involve the making of a 'false statement,' for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner's bank balance.

As defined in the Uniform Commercial Code, a check is simply 'a draft drawn on a bank and payable on demand,' § 3–104(2)(b), which 'contain[s] an unconditional promise or order to pay a sum certain in money,' § 3–104(1)(b). As such, '[t]he drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder.' § 3–413(2). The Code also makes clear, however, that '[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.' § 3–409(1)."

The Court considered the additional institutions covered by the 1970 amendment to § 1014 which again is applicable to our consideration of 15 U.S.C. § 645(a), and said of bad checks:

"But there was no contemporaneous congressional recognition of the substantial expansion of federal criminal jurisdiction that would attend the proscription of bad checks. . . .

"Given this background—a statute that is not unambiguous in its terms and that if applied here would render a wide range of conduct violative of federal law, a legislative history that fails to evidence congressional awareness of the statute's claimed scope, and a subject matter that traditionally has been regulated by state law—we believe that a narrow interpretation of § 1014 would be consistent with our usual approach to the construction of criminal statutes. The Court has emphasized that 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'"

The Government here urges that the defendant represented or implied that the check was good—that the third person who signed it had the funds on deposit. This argument was also made in *Williams v.*

*United States,* —— U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767, as to the drawer, and of it the Court said:

"The foregoing description of bank checks is concededly a technical one, and the Government therefore argues with some force that a drawer is generally understood to represent that he 'currently has funds on deposit sufficient to cover the face value of the check.' . . . If the drawer has insufficient funds in his account at the moment the check is presented, the Government continues, he effectively has made a 'false statement' to the recipient. While this broader reading of § 1014 is plausible, we are not persuaded that it is the preferable or intended one. It 'slights the wording of the statute,' *United States v. Enmons,* 410 U.S. 396, 399 [93 S.Ct. 1007, 1009, 35 L.Ed.2d 379] (1973), for, as we have noted, a check is literally not a 'statement' at all. In any event, whatever the general understanding of a check's function, 'false statement' is not a term that, in common usage, is often applied to characterize 'bad checks.' And, when interpreting a criminal statute that does not explicitly reach the conduct in question, we are reluctant to base an expansive reading on inferences drawn from subjective and variable 'understandings.'

"Equally as important, the Government's interpretation of § 1014 would make a surprisingly broad range of unremarkable conduct a violation of federal law."

We see no reason why *Williams v. United States* should not be applied to 15 U.S.C. § 645(a). When this is done we must conclude that the indictment before us is fatally defective and must be dismissed.

Thus the judgment must be reversed and the case is remanded with the direction to set aside the conviction and to dismiss the indictment.

IT IS SO ORDERED.