**UNITED STATES of America, Appellee,**

v.

**Robert WORTHINGTON, Defendant-Appellant.**

**No. 1152, Docket 87–1008.**

United States Court of Appeals, Second Circuit.

Argued May 19, 1987.

Decided June 30, 1987.

**316**

Kenneth Roth, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Helen Gredd, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee U.S.

Herbert M. Levy, New York City, for defendant-appellant Robert Worthington.

Before VANGRAAFEILAND, MESKILL, and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Appellant was convicted upon a theory that naming a fictitious bank as drawee of a check constituted a "false statement". In common parlance a "bad check"—one drawn with insufficient funds in an account at the time—is not a "statement" subject-

ing the drawer to federal prosecution. The reason is that such a check may nonetheless be honored or may have been drawn negligently or even innocently. But the act of printing the name of a nonexistent drawee bank on a check fits squarely within the dictionary definition of "false statement". As such, it is not therefore similarly susceptible to an innocent explanation. Instead, like "Nye's sleeve stuffed full of aces", the act is done "with intent to deceive" and to euchre the victim out of his money. Bret Harte *Plain Language from Truthful James*, American Writers 232 (rev. ed. 1939).

▪ Robert Worthington appeals from a conviction for making a false statement to a federal agency. The alleged "statement" was made on a check submitted to the Internal Revenue Service (IRS). The check was drawn on a nonexistent bank. The prosecution proceeded on the theory that designating a fictitious bank as the drawee of a check was a representation that the bank did in fact exist. On appeal from a judgment entered in the United States District Court for the Southern District of New York (Cannella, J.) on December 19, 1986, appellant challenges this theory, arguing that a check cannot assert or represent anything and, therefore, is not a statement. Because we think that the designation of a nonexistent bank as the drawee of a check constitutes a "statement", we affirm the judgment of conviction.

## BACKGROUND

The subject check was submitted to the Internal Revenue Service under the following circumstances. In 1981 Technassociates, Inc., a Washington, D.C.-based data processing and management consulting firm, was managed by its two principals, Peter Ythier and Marvin Zentner. In June of that year the company was experiencing serious cash flow problems arising, in part, from $134,000 in taxes due and owing to the IRS. Ythier and Zentner contacted Worthington—the head of American Internax Planning—to discuss obtaining a line of credit. Zentner, Ythier, and Worthington arranged for Internax Planning to as-

sist Technassociates in obtaining a line of credit as well as advancing $134,000 to meet the tax liability. Internax Planning's fee was to be $19,000.

As a step towards providing these services, on July 1 two associates of Internax Planning were dispatched from New York City to Washington carrying a letter of introduction signed by Worthington. After examining the financial records of Technassociates, they accepted a check for $2,200 as a down payment on the previously contracted for fee. In a telephone conference, Ythier and Worthington agreed to meet in New York on July 2. In the meanwhile—and also on July 1—an individual, who was not identified at appellant's trial, delivered over the counter in an IRS office in Manhattan a third party check in the amount of $134,000. The following day, July 2, Ythier and Worthington met in New York. Worthington gave Ythier an IRS counter receipt showing that a third party check had been presented to the IRS in satisfaction of Technassociates' tax bill. Ythier gave Worthington two checks totalling $16,800. Both men also signed a contract formalizing the agreement mentioned above.

Some weeks later Technassociates was faced with another tax liability, this time in the amount of $94,600. Ythier again contacted Worthington who promised to provide the necessary funds in return for a fee of $15,000. On July 27, an unidentified individual presented a check dated July 23 to the IRS in its Manhattan office in the amount of $94,600. The payee was Technassociates; the drawer's signature was illegible. The check, drawn on the International Bank of San Antonio (Texas), contained the following notation on its reverse side:

> This item represents a loan to Technassociates, Inc. to be paid to the IRS under conditions and agreements elsewhere determined. This item not to be deposited until three days from date.

The check was endorsed to the IRS by an unidentified endorser. A few days after that, Technassociates received an IRS counter receipt from Internax Planning indicat-

ing that the IRS had received a check in satisfaction of its second tax bill.

Subsequently, during the fall of 1981, the IRS notified Technassociates that the first check had been drawn on an imaginary bank. When Ytheir and Zentner called Worthington to complain, appellant responded that he had "abated" Technassociates' tax problem. Afterwards, the IRS notified Technassociates that the second check was also worthless because it too had been drawn on an imaginary bank.

On June 26, 1986 Worthington was indicted on three counts for his involvement in the submission of the two checks to the IRS. The first count alleged a violation of 18 U.S.C. § 1343, the federal statute proscribing wire fraud. The second and third counts based on alleged violations of 18 U.S.C. § 1001 are significant to this appeal. This statute makes illegal the submission of "any false writing or document" containing "any false, fictitious, or fraudulent statements" to a federal agency in connection with a matter within the jurisdiction of the agency. The second count was based on the July 1 tender of the $134,000 check and the third count alleged the July 27 submission of the $94,600 check in satisfaction of taxes owed by Technassociates.

Worthington was found not guilty on count one, the wire fraud charge. Although the jury was unable to reach a verdict on the second ($134,000) count, it did find appellant guilty on the third ($94,-600) count, for which Worthington received a five year prison term and a $10,000 fine.

## DISCUSSION

### A. *Whether a Check Drawn on a Nonexistent Bank is a False Statement*

The principal question raised on this appeal is whether the district court properly ruled that a check drawn on a nonexistent bank is a false statement within the meaning of § 1001. Appellant relies on *United States v. Elliott*, 689 F.2d 178 (10th Cir. 1982) (per curiam), which held that submission of a third party check—not backed by sufficient funds—to the Small Business Ad-

ministration as payment on a loan was not a false statement within the meaning of 15 U.S.C. § 645(a). Inasmuch as *Elliott* rested entirely on the authority of *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), *see* 689 F.2d at 180–81, reliance on *Elliott* simply brings into focus the question of whether *Williams* governs the present case. We now consider that question.

*Williams* involved a conviction under 18 U.S.C. § 1014 that proscribes, *inter alia,* knowingly making a false statement to a bank insured by the Federal Deposit Insurance Corporation (FDIC) in order to obtain credit. Williams was convicted essentially of check-kiting, that is, for writing checks unsupported by sufficient funds and depositing them in banks insured by the FDIC. In reversing his conviction, the Supreme Court stated first that the deposit of a check with insufficient funds did not represent the making of a false statement because "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'" *Williams,* 458 U.S. at 284, 102 S.Ct. at 3091. The Court also relied upon another equally important reason in reversing Williams' conviction. It believed that Congress did not intend to "make a surprisingly broad range of unremarkable conduct a violation of federal law." *Id.* at 286, 102 S.Ct. at 3092.

Worthington argues that *Williams* governs his conviction. We cannot agree. The rationale of *Williams* —that drawing a check unsupported by sufficient funds is neither a statement nor the type of conduct Congress aimed to criminalize—is simply inapplicable to the circumstances here. The Supreme Court first concluded that a check makes no representation as to the state of the drawer's bank account. *Id.* at 285, 102 S.Ct. at 3091. Here, of course, the check contains the name of a drawee "bank", which designates where the check may be presented for payment. Naming a bank is a representation that the bank upon which the check is drawn does in fact exist. Thus, unlike *Williams,* the assertion in the instant case constitutes a statement.

*United States v. Price,* 763 F.2d 640 (4th Cir.1985), supports this conclusion. In *Price,* the court held that the credit card receipts with fictitious credit card account numbers, account owners, and amounts of purchase consisted of false statements. *Id.* at 643. Printing the name of a nonexistent bank on a check is analogous to the entry of a fictitious credit card account owner on a receipt because in each instance there is an averment that an obligor exists. *Cf. United States v. Bonnette,* 781 F.2d 357, 365 (4th Cir.1986) (sight draft to which title representing a fictitious sale of a car had been attached represented that the car existed and that it had been sold for value); *United States v. Tucker,* 773 F.2d 136, 139 (7th Cir.1985) (forged documents representing that commodities had been transferred to a middleman was a false statement), *cert. denied,* —— U.S. ——, 106 S.Ct. 3338, 92 L.Ed.2d 774 (1986); *Prushinowski v. United States,* 562 F.Supp. 151, 157 (S.D. N.Y.), (check made out to defendant and drawn by a fictitious drawer represented that an obligation was owed by the drawer to the defendant), *aff'd mem.,* 742 F.2d 1436 (2d Cir.1983).

The Supreme Court also did not believe Congress meant to make this kind of "unremarkable conduct a violation of federal law." *Williams,* 458 U.S. at 286, 102 S.Ct. at 3092. Drawing a check on an illusory bank does not strike us as similarly unremarkable. Insufficient funding may have a perfectly innocent explanation, while the representation of a nonexistent bank may not. It is true that "many people understand a check to represent that the drawer will have sufficient funds deposited in his account by the time the check clears," or that, as the Supreme Court noted, "the drawer will make good the face value of the draft if it is dishonored by the bank." *Id.* at 286 n. 7, 102 S.Ct. at 3092 n. 7. But where there is a fictitious bank named as drawee, the drawer cannot—as in the case of a bounced check—make the check good either before or after an attempted presentment for payment. In the case at bar, the check in question was purportedly drawn by a third party. The very act of drawing such a check and scrib-

bling an illegible drawer's name on it eliminates any possibility that it will ever be made good.

Further, a false statement is defined as one that is "more than merely untrue or erroneous", rather it implies that the "statement is designedly untrue ... and made with intention to deceive the person to whom the false statement is made or exhibited." *Black's Law Dictionary* 725 (4th ed. 1968). For that reason, a check drawn on a knowingly fictitious bank at its inception is a false statement under § 1001. Thus, unlike checks drawn on insufficient funds, we see no reason why Congress would be reluctant to criminalize this sort of conduct.

Consequently, given the logic of *Williams* and analogous cases, we hold that the submission of a check drawn on a nonexistent bank is a representation that the bank exists and, as such, constitutes a false statement within the meaning of § 1001.[1] Thus, appellant's challenge to his conviction as not being a false statement fails.

### B. *Sufficiency of the Evidence*

We turn now to Worthington's claim that his conviction is unsupported by sufficient evidence. Claims challenging the sufficiency of the evidence seldom succeed because a jury verdict must be sustained when there is substantial evidence, "viewed in the light most favorable to the government", to support it. *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Ferguson*, 758 F.2d 843, 855 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985). The substantial supporting evidence test is satisfied when an appellate court upon reviewing the record concludes that any rational juror could have found that the essential elements of the crime charged were proved beyond a reasonable doubt. *United States v. Brown*, 776 F.2d 397, 402 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986).

Worthington contends that there was insufficient evidence to prove that he either personally submitted or caused another to submit the $94,600 check to the IRS. Concededly, there is no direct evidence that appellant signed the fictitious check or submitted it since, as noted, the signature on the check was illegible, and the person who submitted it over the IRS counter was not identified at trial.

Yet, sufficient circumstantial evidence supports Worthington's conviction. Both Zentner and Ythier testified that Worthington agreed to make the $94,600 payment to the IRS, and Ythier testified that he paid a fee to Internax Planning for this service. Further, Technassociates received the IRS counter receipt from Internax Planning shortly after Worthington agreed to make the payment to the IRS. Worthington claimed success in "abating" Technassociates' tax problem when questioned about the worthless check used for the earlier payment. Finally, an expert testified that it was likely that the check had been typed on a machine in Worthington's office.

As an alternate explanation, appellant contends that it was Ythier who submitted the check to the IRS. But there is no evidence suggesting that Ythier was in New York on the day the check was presented, and Ythier denied this allegation at the trial. Such an explanation presented a credibility issue which the jury resolved against appellant. As such, it is one that we will not disturb. *See United States v. Sprayregen*, 577 F.2d 173, 174 (2d Cir.), *cert. denied*, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978); *United States v. Lamont*, 565 F.2d 212, 216 (2d Cir.1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1467, 55

---

**1.** We agree with both parties that *Williams* may not be distinguished because it involved an indictment under § 1014 rather than prosecution under § 1001. But for the submission of the check to the IRS rather than a FDIC-insured bank, the appellant might have been prosecuted under § 1014. *Cf. United States v. Waechter*, 771 F.2d 974, 978–79 (6th Cir.1985) (applying *Williams* in a case brought pursuant to 18 U.S.C. § 1010); *Elliott*, 689 F.2d at 180–81 (applying *Williams* in case brought pursuant to 18 U.S.C. § 645(a)).

L.Ed.2d 505 (1978).  In sum, Worthington's conviction is supported by sufficient evidence.

## CONCLUSION

For the reasons stated above, the judgment of conviction is affirmed.