UNITED STATES of America

v.

Ernest ROBICHAUX.

Crim. A. No. 88–401.

United States District Court, E.D. Louisiana.

Oct. 11, 1988.

**108**

Jan M. Mann, Asst. U.S. Atty., New Orleans, La., for U.S.

Peter J. Castano, New Orleans, La., for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

In this case defendant, Ernest Robichaux, challenges a superseding indictment filed by the Government charging him with conspiracy to make false statements to Merchants Bank for the purpose of influencing the action of Merchants Bank upon an application, advance, and commitment in violation of Title 18, United States Code, Section 1014 and to execute a scheme to defraud Merchants Bank and obtain money by means of false pretenses in violation of 18 U.S.C. § 1344. The indictment states that in furtherance of the alleged conspiracy, defendant deposited a fraudulent duplicate credit card receipt in Merchants Bank on October 29, 1984.

The second count of the superseding indictment charges that defendant executed a scheme to defraud the Merchants Bank, by obtaining credit in the Hansel & Gretel House bank account for credit card receipts deposited, and describes the same overt act as in Count 1—the deposit of a fraudulent duplicate credit card receipt on October 29, 1984. Thus, the two count superseding indictment charges defendant with violating 18 U.S.C. §§ 1014 and 1344.

Defendant moves to dismiss the superseding indictment on ex post facto grounds, arguing that the indictment covers some actions that occurred before 18 U.S.C. § 1344 was enacted (October 12, 1984). In essence, defendant contends that because some of the acts alleged were not punishable by Section 1344 when they were committed, the entire indictment should be dismissed. Defendant's motion is DENIED.

## I.

Defendant advances four arguments in support of his contention that the superseding indictment violates the ex post facto clause of the Constitution.[1] First, defendant argues that any allegedly fraudulent credit card deposits made by him before October 12, 1984 were not proscribed by federal criminal law because 18 U.S.C. § 1344 had not yet been enacted, and the mail fraud statute, supposedly the only statute under which defendant could have been prosecuted, does not apply to his alleged conduct. He relies principally on the Supreme Court's ruling in *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed. 2d 603 (1974) to support this position. Although defendant is correct that the pre-October 12, 1984 deposits are not punishable under 18 U.S.C. § 1344, and that because of *Maze* he cannot be charged with mail fraud, he is mistaken in his claim that mail fraud is the only alternative open to the government. As later analysis will demonstrate, he is prosecutable under Section 1014 for those earlier acts.

In *Maze*, the defendant used an unauthorized credit card to pay motel bills. After the defendant used the unauthorized card, the motels mailed the invoices to the bank. Defendant was charged with three violations of the federal mail fraud statute, 18 U.S.C. § 1341, on the theory that defendant knew that each motel merchant would cause the sales slips of the purchases to be delivered by mail to the bank, which would in turn mail them to the true credit card holder for payment.

---

**1.** Article I, Section 9 of the Constitution provides, "No Bill of Attainder or ex post facto law shall be passed." U.S. Const. Art. I, § 9, cl. 3. The clause prohibits the federal government from punishing persons for actions which were not illegal when performed. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798).

The Supreme Court held the mail fraud statute inapplicable to defendant's acts because the statute required the mailings to be "for the purpose of executing the scheme...." The Court found that defendant's scheme "reached fruition when he checked out of the motel", and was not dependent on the mail. The motels became victims when the defendant checked out without using proper credit. *Id.* at 402, 94 S.Ct. at 649.

Defendant here cites *Maze* for the proposition that "mailings to collect upon fraudulent credit card transactions [are] not done in furtherance of a scheme to defraud when immediate credit [is] given upon such invoices" and are thus not prosecutable under the mail fraud statute. Defendant draws upon *Maze* to argue that because Merchants Bank gave him immediate credit when he deposited the allegedly fraudulent credit card invoices, he is not prosecutable under the mail fraud statute for those acts. Finally, defendant concludes that the mail fraud statute was the "only statute under which transactions of the nature charged against defendant had been prosecutable, until the promulgation of 18 U.S.C. § 1344...."

Defendant is probably correct that if the mail fraud statute were the only federal criminal law applicable to his pre-October 12, 1984 conduct, those acts would not be prosecutable. Like the situation in *Maze*, any mailing of the allegedly fraudulent credit card invoices here would have occurred after the scheme to obtain credit had already come to fruition, after the bank became a victim. And so, such mailings would not have been in furtherance of the scheme contemplated by the mail fraud statute and it would not likely apply to Robichaux.

## II.

■ However, here the superseding indictment does not assert mail fraud under 18 U.S.C. § 1341 as the overt act in the conspiracy to defraud the bank. Rather, the superseding indictment speaks of a violation of 18 U.S.C. § 1014. If Section 1014 applies to defendant's pre-October 12, 1984 conduct, then the indictment does not suffer the ex post facto impediment that defendant's mail fraud argument raises. Of course, if defendant's second argument were correct—that Section 1014 does not apply to his conduct and that mail fraud is the only statute that could have applied—then defendant's first argument would carry the day.

This Court concludes that Section 1014 does apply to the acts alleged in the Government's indictment of Mr. Robichaux.

18 U.S.C. § 1014, enacted June 18, 1948, makes it a crime to

"knowingly mak[e] any false statement or report ... for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, purchase agreement, repurchase agreement, commitment or loan...."

The Fourth Circuit, in *United States v. Price*, 763 F.2d 640 (4th Cir.1985), held that depositing fraudulent credit card slips with a bank insured by the F.D.I.C. violates 18 U.S.C. § 1014. In *Price*, defendants made phony credit card slips, filled in names from a telephone directory, and filled in fictitious credit card numbers and amounts of sales on the credit card sales receipts. Defendants then ran the bogus sales receipts through a credit card imprinter bearing the name of their business, "Greater Charleston Supper Club". Then, they deposited the phony receipts into their corporate bank account.

In appealing their conviction under Section 1014, the defendants argued that depositing false credit card receipts in a federally insured bank did not constitute the making of a false statement within the meaning of 18 U.S.C. § 1014. As Robichaux does here, the defendants in *Price* contended that *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (in which the Supreme Court held that depositing "bad checks" in federally insured banks was not an activity proscribed by Section 1014) applied with equal force to their fraudulent credit card slip

scheme, and immunized them from prosecution under the statute.

The Fourth Circuit, however, was unpersuaded by this argument, distinguishing the facts before it from those of *Williams*. As the *Price* court explained:

> We are unconvinced by Price's argument that under *Williams* the deposit of false credit card sales receipts, like the deposit of 'bad checks,' is not a chargeable offense under 18 U.S.C. § 1014. In our view, this case is vastly different from the situation in Williams. Here, the government never alleged that the credit card sales receipts themselves were statements. Instead, the government proved that false statements, in the form of fictitious credit card numbers and amounts of purchase and names obtained from telephone books, were written onto the receipts. Thus, unlike the checks in *Williams* which carried with them no representation, express or otherwise, as to the drawer's account balance, the credit card sales receipts in this case carried with them express false representations concerning the credit card account numbers, the account owners, and the amounts of purchase. It was these false statements which Price and the others used in order to obtain cash from the bank to which they were clearly not entitled.

*Price, supra,* 763 F.2d at 643. *Accord, U.S. v. Worthington,* 822 F.2d 315, 318 (2d Cir.1987).

Like the defendants in *Price*, Robichaux is accused of presenting fraudulent credit card slips to a bank to obtain cash to which he was not entitled. Although Mr. Robichaux's alleged conspiratorial method differed from that of the *Price* defendants—in that he did not use fictitious names and credit card numbers—he is accused of presenting slips with false representations concerning the amounts of purchase. That is sufficient to meet the *Price* "false statement" test, and the Government's charge that defendant violated 18 U.S.C. § 1014 is supportable under the law. The functional result of Mr. Robichaux's alleged conduct is the same as in *Price*. Thus, this Court rejects the argument that the mail fraud statute is the only statute applicable to his pre-Section 1344 activities, and holds that *Williams* does not shield the defendant from prosecution under Section 1014.

### III.

■ Defendant's next argument for dismissal on ex post facto grounds focuses on the conspiracy charge in the indictment. Defendant contends that because the indictment charges him with a conspiracy to violate Section 1344, and describes as part of that conspiracy some acts beginning before the enactment of Section 1344, the entire indictment is defective and should be dismissed until the Government reforms the indictment to charge only a conspiracy arising after Section 1344 was enacted. Collaterally, defendant adds that the admission of evidence establishing pre-enactment actions as proof of a pattern of conduct is itself an affront to the ex post facto clause. This argument, while superficially appealing, has been rejected by several courts, including the Fifth Circuit.

For example, in *United States v. Wells Fargo Armored Service Corporation,* 587 F.2d 782 (5th Cir.1979) (per curiam), the defendant corporation was convicted under an indictment charging that the corporation participated in a conspiracy beginning in 1968 and continuing until August 1975. The Fifth Circuit held that the indictment's omission of overt acts occuring after December 21, 1974, the date when the offense was made a felony, was not a sufficient infirmity to render the conviction violative of ex post facto concerns.

Moreover, the Third Circuit, in *United States v. Gibbs,* 813 F.2d 596, 602 (3d Cir. 1987), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985), recently cited *Wells Fargo* for the proposition that "a statutory change which takes effect during the existence of an ongoing conspiracy will subject members of that conspiracy to the provisions of the later enactment." The key is the continuing nature of the offense charged. In *Gibbs*, defendant was charged with possession of a controlled substance and with a conspiracy to distribute. Be-

cause defendant's indictment on the conspiracy charge alleged that the conspiracy continued after the effective date of a penalty-enhancing statute, the court held that the statute applied to the entire conspiracy. The court reasoned that once the government established a defendant's involvement in a conspiracy, the burden shifted to the defendant to prove by affirmative acts inconsistent with the object of the conspiracy that he withdrew from it. Because the defendant was unable to demonstrate withdrawal from the conspiracy before the effective date of the penalty enhancement statute, the court concluded that the statute was applicable to the conspiracy. *Id.*

For the same reason, this Court concludes that because the indictment alleges that Robichaux committed acts after October 12, 1984 that are chargeable under Section 1344, the indictment does not implicate ex post facto infirmities by referring to acts committed before the statute's effective date. As the Eleventh Circuit noted in *United States v. Cortez,* 757 F.2d 1204, 1207 (1985), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). "Requiring proof of illegal conduct after the enactment of the statute prevents it from running afoul of the ex post facto clause." Thus, while the Court will consider whether a cautionary charge to the jury is warranted, the Court does not find the Government's indictment to be defective merely because it describes a conspiracy that began before the effective date of the statute and continued thereafter.

### IV.

Finally, defendant urges that his indictment violates the ex post facto clause because it deprives him of the defense described in *Maze.* Defendant's argument seems to be that a law that deprives a person of a defense to the charged conduct violates the ex post facto clause if that defense was available to the person before the statute's promulgation. However, as the Court has already noted, the *Maze* defense would only have aided the defendant if mail fraud were the sole criminal violation with which he could have been charged before October 12, 1984. Because defend-

ant could have been, and indeed is, charged with violating 18 U.S.C. § 1014, an offense for which the *Maze* defense is unavailable, the indictment does not thereby violate the ex post facto clause.

For all of the foregoing reasons, defendant's motion to dismiss on ex post facto grounds is DENIED.