**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesse L. DAVIS, Defendant–Appellant.**

**No. 92–2188.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1993.

Decided March 17, 1993.

Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, Scott A. Verseman (argued), Office of the U.S. Atty., Rockford, IL, for plaintiff-appellee.

Carol A. Brook, Camille B. Conway (argued), Office of the Federal Public Defender, Chicago, IL, for defendant-appellant.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

A jury found Jesse Davis guilty of six counts of bank fraud in violation of 18 U.S.C. § 1344(a)(2) (now 1344(2), immaterially amended), which makes it a crime to "knowingly execute ... a scheme ... to obtain any of the moneys ... or other property owned by ... a federally insured financial institution by means of false or fraudulent pretenses, representations, or promises." The judge sentenced Davis to concurrent one-year prison terms.

Someone—but perhaps not Davis—had submitted a federal income tax return in the name of Bernard Williams. Williams—not to be confused with the distinguished English philosopher of that name (author of such books as *Moral Luck* and *Ethics and the Limits of Philosophy* )—was in fact a homeless person who had no income and had never filed a return. The return claimed a refund of $12,604, and the Internal Revenue Service duly mailed to the phony address given on the return a check for that amount made out to Bernard Williams. Either by himself or with Davis's aid, Freddie Green (who was tried and convicted with Davis) tricked Williams—apparently by making him think he was signing a job application—into endorsing the check to Green, who then twice tried unsuccessfully to cash it either (the record is unclear) at banks or at currency exchanges. Unable to cash the check, Green gave it to Davis, who opened an account in the name of "Pro–Tech Chemical Company" at Independence Bank of Chicago, a federally insured bank. The signature card, which Williams had again been tricked into signing, authorized both Davis and Williams to write checks on the account. Pro–Tech was a mythical company; Davis disputes this, but the jury could and doubtless did find against him on this issue. Once the account was open and the IRS check was deposited and cleared, Davis

wrote checks, mainly to cash or to Green, until the account had less than $16 in it.

■ Count I charged that the opening of the account, the deposit of the check from the IRS, and the subsequent draining of the account constituted a scheme to defraud the bank by the false representation that Pro–Tech was an actual business. The other five counts of bank fraud of which Davis was convicted involved the deposit of eight money orders in the Pro–Tech account. These were forged money orders, which the bank never collected. As a result, it lost money when Davis and Green drained the account. It lost no money on the IRS check, however, of which it was a holder in due course despite the fact that the payee both was an imposter's tool and was tricked into endorsing the check. So at least we read UCC § 3–404 and the Official Comment thereto, and we do not understand the government to be arguing otherwise, or to be arguing that the bank was placed on notice of the fraud by the attempted endorsements to Green on the back of the check, which are marked "Void"—but we do not know who marked them.

■ Davis's challenge to the counts involving the money orders has no possible merit, as we shall see, but we think he should have been acquitted on Count I. He may well have committed fraud against the Internal Revenue Service—with which he was not charged. But only in the most literal, hypertechnical sense could he be said to have schemed to defraud the *bank* of money or other property belonging to it. It is true that once the IRS check cleared, the $12,604 that the IRS had promised to pay Bernard Williams became the bank's property, with any claimants to the money—whether Williams, Green, Davis, or the IRS—mere creditors of the bank rather than owners of the money. And it is also true that the false representations made by Davis in establishing the account were done in order to get the proceeds of the check from the bank. So there is a sense in which the bank was "defrauded" of the amount that Davis withdrew from the account. But it is not the sense of the bank

fraud statute, the purpose of which is not to protect people who write checks to con artists but to protect the federal government's interest as an insurer of financial institutions. There is no way in which the fraud could have endangered the Independence Bank of Chicago. As a holder in due course of the IRS's check—a negotiable instrument that had not been forged or stolen—the bank took free of any defenses that the IRS might have had to a suit by the payee (Williams) or other holders. UCC §§ 3–305(2)(b), 3–306, Ill.Rev.Stat. ch. 26, ¶¶ 3–305(2)(b), 306; *Northwestern National Ins. Co. v. Maggio*, 976 F.2d 320 (7th Cir.1992). Maybe, as we suggested earlier, the bank wasn't really a holder in due course and hence was put at risk, but the government failed to establish this.

 Even if all this is wrong the government must still lose, because, while conceding that a misrepresentation must be material in order to give rise to liability under the bank fraud statute, *United States v. Swearingen*, 858 F.2d 1555, 1556–1558 (11th Cir.1988) (per curiam); cf. *United States v. Staniforth*, 971 F.2d 1355, 1357–58 (7th Cir.1992), the government failed to prove that Davis's misrepresentation concerning Pro–Tech was material. The government argues, not implausibly, that if Davis or Green had tried to open an individual as distinct from a business bank account, the bank might have been suspicious of a large check endorsed to one or both of them. But all that it offers as evidence is that Green had twice failed to cash the check. We do not know why he failed or even what type of institution he tried to cash the check at. Maybe he tried to cash it at banks which refused simply because he had no account with them. Although an officer of Independence Bank testified for the government, he was not asked whether the bank would have refused to open a personal account for Davis and to allow him to deposit the IRS's check in it. The government was required to prove each element of the crime beyond a reasonable doubt, and we cannot see how that burden could be thought satisfied with respect to the materiality of the representa-

tions concerning Pro–Tech or Williams's signing authority.

This conclusion does not affect the other counts. They were based on further misrepresentations which clearly were material—the misrepresentations concerning the validity of the money orders. Although *Williams v. United States*, 458 U.S. 279, 284–85, 102 S.Ct. 3088, 3091–92, 73 L.Ed.2d 767 (1982), held that a check is not a representation that the drawer has sufficient funds to cover it, it is a representation that the drawer, bank, etc. exist. *United States v. Falcone*, 934 F.2d 1528, 1540–42 (1991) (per curiam), on rehearing, 960 F.2d 988 (11th Cir.1992) (per curiam); *United States v. Worthington*, 822 F.2d 315, 317–19 (2d Cir.1987). Maybe the government could have done something with the misrepresentation that Williams had (knowingly) endorsed the check, but it made no attempt to.

The judgment is reversed with respect to Count I, with directions to acquit, but affirmed with respect to the remaining counts. The defendant is entitled however to be resentenced on those counts.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.