**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Christopher Eric McNEIL,**
**Defendant–Appellant.**

No. 02–30138.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2002.

Filed Feb. 26, 2003.

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, MT, for the defendant-appellant.

William W. Mercer, United States Attorney, Billings, MT, for the plaintiff-appellee.

Before: B. FLETCHER, KLEINFELD and McKEOWN, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

This is a case of identity theft. Defendant-appellant Christopher Eric McNeil stole the identity of a real person, Ian P. Doe,[1] a resident of New Hampshire, to obtain a fraudulent federal tax refund. Doe had nothing to do with the fraud or events underlying this case. Following a jury trial, McNeil was convicted of one count of bank fraud, in violation of 18 U.S.C. § 1344(2), and one count of wire fraud, in violation of 18 U.S.C. § 1343. He moved the district court for a judgment of acquittal pursuant to Fed.R.Crim.P. 29, which was denied. This appeal ensued.

Because we conclude that McNeil's convictions for bank and wire fraud are sound, we affirm the district court.

## I. Standard of Review

We review de novo the district court's ruling on McNeil's motion for a judgment of acquittal, *United States v. Hardy*, 289 F.3d 608, 612 (9th Cir.2002), and its interpretation of the elements of the criminal statute. *See United States v. Carranza*, 289 F.3d 634, 642 (9th Cir.2002). We review the sufficiency of the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Hernandez–Herrera*, 273 F.3d 1213, 1218 (9th Cir.2001).

---

1. In order to protect the identity of the victim in this case, we exercise our discretion and refer to him as only as "Doe."

## II. Factual Background

Viewed in the light most favorable to the jury's verdict, the facts are as follows: In October, 1999, McNeil opened a post office box in Missoula, Montana, under his own name. His application authorized Ian P. Doe and Jason Kimionakis to receive mail there, but neither Doe nor Kimionakis could retrieve mail there without a key from McNeil. McNeil also acquired a Montana driver's license/ID card in the name of Ian P. Doe, but with a picture of himself. In March, 2000, McNeil opened an account with $400 in Doe's name at First Interstate Bank in Missoula using the ID card and Doe's social security number.

On October 11, 2000, First Interstate Bank received a request for a wire transfer of $350 from the "Doe" account to the State Street Bank and Trust in Boston, Massachusetts. Although the transfer was sent, the money was returned to First Interstate Bank by State Street Bank because there was neither a full name nor a valid account number to which to credit the transfer.

In 2001, while McNeil was in prison in the New Hampshire State Penitentiary,[2] a typed and signed tax return requesting a tax refund of $4,788 was filed with the IRS in the name of Ian P. Doe. The return included Doe's social security number and the account number for the First Interstate Bank account. Along with the return, a W–2 form indicated that Doe had made $23,000 from employment with Russell Construction. In May, 2001, First Interstate Bank received an electronic transfer of $4,788 for deposit in the "Doe" account.

A search of a house owned by McNeil in North Dakota (where no other individuals resided) yielded a bank card in Doe's name, an envelope addressed to Doe at the Missoula P.O. Box, a checkbook for a T. Rowe Price account in McNeil's name bearing an account number that was involved in the unsuccessful wire transfer, handwritten notes with Doe's social security number, date of birth, and address, and an envelope from the Montana state DMV addressed to Jason Kimionakis at the Missoula P.O. Box.

McNeil was indicted for one count of bank fraud in violation of 18 U.S.C. § 1344(2) and one count of wire fraud in violation of 18 U.S.C. § 1343. At trial, the government presented a number of witnesses, including the real Doe, who denied filing a tax return for 2000 and meeting McNeil. Doe also testified that he never had a P.O. Box or bank account in Montana. A representative for Russell Construction testified that the corporation had been unable to find any employment record for Doe in 2000.

The government presented evidence that Kimionakis was incarcerated in the New Hampshire State Penitentiary from 1997 through 2001, and that McNeil explained to North Dakota police officers that he had created the Doe alias with knowledge of the background and identifier information of the real Ian P. Doe. The jury heard evidence that the electronic transfer of the IRS refund to First Interstate Bank necessarily crossed state lines over the phone lines. And the government established that McNeil possessed and had access to a typewriter while in prison in New Hampshire and that inmates there may receive and mail tax forms.

The jury convicted McNeil on both counts, and this appeal followed.

---

**2.** Neither the briefs nor the record contain any account of the circumstances that led to McNeil's imprisonment in New Hampshire.

## III. Discussion

McNeil contests his convictions for bank fraud and for wire fraud. As to his bank fraud conviction, he contends that his conduct did not fall within the scope of § 1344(2) and that he lacked the requisite specific intent required by that section. McNeil also contests the sufficiency of the evidence for his wire fraud conviction. We turn first to his challenges to his bank fraud conviction.

## A. Bank Fraud

■ The federal crime of bank fraud is defined as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined[,] . . . imprisoned[,] . . . or both.

18 U.S.C. § 1344. The scope of the first and second subsections of § 1344 differs substantially. Section 1344(1), which is not at issue in this case, criminalizes schemes to defraud financial institutions. Section 1344(2), under which McNeil was indicted and convicted, is broader in that it criminalizes schemes to obtain money or property in the custody or control of a bank by deceptive means. Under both sections, it is illegal to *attempt* to execute a scheme or artifice. *Id.* § 1344 ("[w]hoever knowingly . . . attempts to execute a scheme or artifice").

All the statute facially seems to require in a case involving property in the custody or control of a bank, is that there be an attempt to obtain such property from the bank by deceptive means. However, we need not address whether § 1344(2) reaches cases in which no deception actually is aimed at the bank to obtain the property. *See United States v. Thomas,* 315 F.3d 190 (3d Cir.2002). Here, quite plainly, McNeil engaged in a course of deception toward the bank in order for the IRS refund to be deposited in the "Doe" account. The facts unmistakably support the reasonable inference that he took substantial steps in preparation for engaging in a course of deception toward the bank in order to transfer the money from the "Doe" account to an account in his name.

■ Even though McNeil's ultimate goal was to obtain funds from the IRS, bank fraud charges may lie even if the bank is not the immediate or sole victim of the defendant's conduct. *See United States v. Crisci,* 273 F.3d 235, 240 (2d Cir.2001). Here, the deception in which McNeil engaged was plainly directed at First Interstate Bank as well as at the IRS, and the scheme to deceive the bank was essential to McNeil's overall plan. Thus, the bank was not merely an unwitting instrumentality of a scheme to defraud the IRS, it was also a victim of McNeil's deception.[3]

We disagree with the contrary conclusion reached by the Seventh Circuit in a factually similar case. *See United States v. Davis,* 989 F.2d 244 (7th Cir.1993). The *Davis* decision rested significantly on the panel's determination that Congress's aim

---

3. Such a scenario is quite different from those that the Second Circuit has found lie outside the scope of § 1344, such as a "pigeon drop" scheme (in which the victim is induced to draw money from a bank and to entrust it to a defendant), or certain schemes to pass bad checks. See *United States v. Laljie,* 184 F.3d 180, 190 (2d Cir.1999) (citing *United States v. Jacobs,* 117 F.3d 82, 92–93 (2d Cir.1997) and *United States v. Blackmon,* 839 F.2d 900, 902 (2d Cir.1988)).

in enacting § 1344 was to avoid harm to the federal fisc by preventing loss to federally insured financial institutions. The *Davis* panel held that because the government failed to prove that the bank had not taken an IRS refund as a holder in due course (and accordingly that the bank suffered an actual or potential loss), the purpose of the statute was not served, and the defendant could not be held criminally liable. Aside from the obvious difficulty of making liability for federal bank fraud turn on the correct application of state commercial law and possible subsequent state-court adjudication, *see United States v. Young*, 952 F.2d 1252, 1257 (10th Cir. 1991) (noting that a bank is exposed to a risk of loss when a defendant's conduct exposes the bank to civil litigation), we also disagree that Congress' purpose is inconsistent with an interpretation of § 1344(2) that reaches McNeil's conduct.

■ Congress, within its constitutional limits, is free to define federal crimes more broadly than the core harms it seeks to remedy. In attempting to prevent losses to federally insured institutions—and the damage such losses cause to the federal fisc—Congress reasonably could have determined that it was appropriate to criminalize schemes to obtain money or property from a bank whether or not such schemes expose a bank to actual or potential loss, as the plain language of the statute suggests. Although the legislative history of § 1344 establishes that Congress was concerned to prevent losses to federally-insured institutions, *see* S.Rep. No. 98–225, at 377 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182; *see also* H.R. Rep. 98–901, at 2 (1984), it does not support the proposition that Congress intended to limit the reach of § 1344(2) to cases in which a bank is put at risk of a loss.

Indeed, portions of the legislative history affirmatively indicate that the statute, as enacted, was intended to be construed broadly to reach a "wide range of fraudulent activity," 1984 U.S.C.C.A.N. at 3519, and to fill gaps left by existing federal criminal laws. *Id.* The only indication that Congress may have intended to narrow judicial constructions of the statute is the Judiciary Committee's comment on a different draft of the law than was finally enacted:

> The new section would prohibit devising a scheme to defraud a financial institution, or to obtain property of such an institution, and engaging in conduct in furtherance of such a scheme. The section thus parallels the language of the current mail fraud and wire fraud statute ("scheme to defraud"), and is intended to incorporate case law interpretations of those sections. The Committee, however, is concerned by the history of expansive interpretations of that language by the courts. The current scope of the wire and mail fraud offenses is clearly greater than that intended by Congress. Although the Committee endorses the current interpretations of the language, it does not anticipate any further expansions.

H.R. Rep. 98–901, at 4. However, the Judiciary Committee's comment does not speak to the question of whether the statute applies to cases in which a bank is not a victim, but rather to the manner in which offenses might have been charged in a version of the bank fraud statute that was never adopted.

The precise language with which the Judiciary Committee's report was concerned would have made it illegal to devise or "intend[ ] to devise a scheme to defraud a financial institution ... and engaging in conduct in furtherance of the scheme." *Id.* at 11. This language was, and is, parallel to the mail and wire fraud statutes. *See* 18 U.S.C. § 1341 ("Whoever,

having devised or intending to devise any scheme or artifice to defraud ... places ... any matter of thing whatever to be sent or delivered by the Postal Service"); 18 U.S.C. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted ... any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice"). By 1984, this language had been broadly construed to permit charging a defendant for a count of mail or wire fraud for each act or instance of placing an item in the mails or transmitting information over wires. *See* Brian P. Perry, Case Note, *"Execution" of a Scheme to Defraud, an Indictment of the Bank Fraud Statute: United States v. Lemon, 941 F.2d 309 (5th Cir.1991),* 61 U. Cin. L.Rev. 745, 763–64 (1992). Before the statute was enacted, this language was dropped in favor of language that more clearly appears to criminalize the *scheme* itself, rather than each act in furtherance of the scheme.[4] *See* 18 U.S.C. § 1344 ("Whoever knowingly executes, or attempts to execute, a scheme or artifice"); *see also United States v. Molinaro,* 11 F.3d 853, 858–860 (9th Cir.1993) (discussing legislative history of § 1344 in deciding that the unit of a § 1344 violation is not "each act in furtherance of a scheme to defraud" but "each execution or attempted execution of the scheme to defraud"). Thus, we find that the legislative history of § 1344 does not support the conclusion that Congress intended to limit the scope of § 1344(2) to cases in which a bank suffered an actual or potential loss, and we are not persuaded to follow the Seventh Circuit's decision in *Davis.*

Our holding is consistent with our prior decisions in which we held that § 1344(2) does not require that money or property be obtained from a bank, nor that a bank suffer an actual loss for a violation to occur. Indeed, we have upheld a conviction for bank fraud where there was no actual loss to a financial institution because we reasoned that requiring an actual loss would not permit the punishment of conduct that could lead to a loss. *See United States v. Mason,* 902 F.2d 1434, 1443 (9th Cir.1990).

■ Because we conclude that § 1344(2) reaches McNeil's actions as revealed by the evidence that was before the jury, we must turn to the question of whether the government proved that McNeil acted with the requisite specific intent under § 1344(2). The statute itself specifies the intent requirement under § 1344(2). It prescribes a punishment for "whoever knowingly executes, or attempts to execute, a scheme or artifice ... to obtain any of the ... property owned by, or under the custody or control of, a financial institution by means of false or fraudulent" means. Consistent with this language, we have held that "[s]pecific intent is established by the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself." *United States v. Mason,* 902 F.2d 1434, 1443 (9th Cir.1990) (internal quotation marks deleted) (quoting *United States v. Green,* 745 F.2d 1205, 1207 (9th Cir.1984)). Here we have no difficulty concluding that a reasonable jury could have determined that McNeil acted with the specific intent necessary under § 1344(2). He used fake identification to open a bank account in Doe's name and misrepresented himself as Doe to the bank in doing so. By filing a false income tax return, he induced the IRS to deposit a

---

4. To be perfectly clear, the question of whether each act in furtherance of a scheme made criminal under the bank fraud statute may be charged as a separate violation of § 1344 is not presented in this appeal, and we do not address it.

refund in the "Doe" account. And, apparently as a trial run, he had attempted to transfer money from the "Doe" account to an account in his name before the refund was deposited.

In sum, McNeil's conduct was well within the scope of § 1344(2), and the evidence was sufficient to establish that he acted with the intent required by that section. Accordingly, we affirm his conviction for bank fraud.

### B. Wire Fraud

We turn to McNeil's contention that the government's evidence was insufficient to sustain his conviction for wire fraud. Specifically, McNeil argues that because the government did not offer evidence of how he could have obtained or created the false W–2 form that was filed with the "Doe" tax return, his conviction must be overturned. We disagree.

Wire fraud has three elements: a scheme to defraud, use of the wires in furtherance of the scheme, and the specific intent to defraud. *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir.2001). At trial, the government offered evidence that McNeil opened an account in Doe's name, and that Doe had no knowledge of the account; that McNeil filed a false IRS return in Doe's name that requested that an electronic refund be sent to the "Doe" account; that sending such a refund electronically necessarily crossed state lines via phone lines; and that McNeil had attempted to have money wired from the "Doe" account to an account in his own name in Boston.

This evidence suffices to meet the government's burden regardless of whether the government was able to show how the W–2 form was obtained or created. Therefore, McNeil is not entitled to a judgment of acquittal on the wire fraud count.

### IV. Conclusion

Because we conclude that neither McNeil's conviction for bank fraud nor his conviction for wire fraud was defective, the judgment of the district court is AFFIRMED.