**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50233 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00405-TJH-2 |
| v. | |
| KIRKLAND CHARLES, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

Argued and Submitted August 5, 2015
Pasadena, California

Before: O'SCANNLAIN, SILVERMAN, and WARDLAW, Circuit Judges.

Kirkland Charles appeals his convictions and sentence for thirteen counts of bank fraud, 18 U.S.C. §§ 2(a), 1344(2), and one count of making a false statement to a federally insured bank, 18 U.S.C. §§ 2(a), 1014. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1. Charles correctly argues that the Amended Trial Indictment was multiplicitous because it charged four executions of bank fraud in thirteen counts. To determine whether counts of bank fraud are multiplicitous, we look to how the indictment defines the scheme and examine how many executions of the scheme are alleged, a factually intensive inquiry. *United States v. Molinaro*, 11 F.3d 853, 859–60 (9th Cir. 1993). Here, the indictment charged Charles as a knowing and willful participant in a scheme to fraudulently obtain and deplete business lines of credit from Bank of America and Wells Fargo Bank. The allegations and proof support four executions of the scheme, one for each of the four lines of credit that was fraudulently obtained and depleted by Charles and various of his co-schemers. The additional nine counts of bank fraud, which charged individual withdrawals from the four lines of credit, do not amount to separate executions of the scheme, but are "act[s] in furtherance of [the] scheme to defraud." *Id.* at 860. Each withdrawal "depended on the [fraudulently obtained lines of credit] for its existence"; did not involve "a new and independent obligation to be truthful"; and did not create a new and independent risk for the banks. *Id.* at 860 & n.16. Because acts in furtherance of a scheme to defraud do not constitute separate bank fraud offenses, these nine counts were multiplicitous. *Id.*; *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005). Although we vacate Charles's convictions

2

for the multiplicitous counts, we do not vacate the first count of conviction for each of the four lines of credit—counts 1, 3, 5, and 10—and we remand for resentencing. *See Stewart*, 420 F.3d at 1021–22; *United States v. Nash*, 115 F.3d 1431, 1438 (9th Cir. 1997).

2. The district court correctly concluded that sufficient evidence supported Charles's convictions for bank fraud in violation of 18 U.S.C. §§ 2(a), 1344(2). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, the evidence demonstrated that checks were made out to Charles and Bareka Holdings, a company controlled by Charles, from the fraudulently opened lines of credit for A&A Development Corporation, California Podiatry of Diabetes Foot, and Howling Moon, Inc. A co-schemer also testified that he overheard Charles and Andrea Avery, the undisputed leader of the scheme, arguing about what percentage of each line of credit Avery would receive. And a former Bank of America employee, Quin Westbrook, testified that Charles helped schedule a site visit to a fictitious office of California Podiatry of Diabetes Foot in connection with his application for a credit line for that company. Drawing all inferences from the evidence in the light most favorable to the government, a

3

rational jury could have concluded that Charles was a knowing member of the scheme, had the intent to defraud, and acted in furtherance of the scheme. *See Rosemond v. United States*, 134 S. Ct. 1240, 1245, 1247–48 (2014); *United States v. McNeil*, 320 F.3d 1034, 1037, 1039 (9th Cir. 2003).

A rational jury also could have concluded that Charles was vicariously liable for Avery's establishment of the Lithium Microsystems line of credit, and subsequent withdrawal of funds from that line, because Avery's actions would have been reasonably foreseeable to Charles as a "knowing participant in [the] scheme to defraud." *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002); *see also United States v. Green*, 592 F.3d 1057, 1071 (9th Cir. 2010).

3. Sufficient evidence also supported Charles's conviction for making a false statement to a federally insured bank, in violation of 18 U.S.C. §§ 2(a), 1014. *See Jackson*, 443 U.S. at 319. Charles concedes that he falsely represented to Bank of America that Kathryn Nemitz was the owner and guarantor of De La Style, Inc. on an application for a line of credit. A rational jury also could have concluded that Charles made this false representation "for the purpose of influencing" Bank of America. 18 U.S.C. § 1014. The application itself, and Bank of America's loan review process, would have made it clear to Charles that the identity of the guarantor was relevant to the bank's decision-making process.

4. The district court did not plainly err in admitting copies of two California driver's licenses issued to Charles (Exhibits 200 and 201) without authentication, because the driver's licenses were "cumulative of other evidence admitted at trial without objection." *United States v. Musacchio*, 968 F.2d 782, 791 (9th Cir. 1991). Charles concedes that the applications for his driver's licenses (Exhibits 245 and 248) were properly admitted as certified public records. These applications contained Charles's handwriting and signatures, and the jury could have used the applications, like the driver's licenses, as exemplars when identifying Charles's handwriting on contested documents.

5. The district court did not plainly err when it declined to sua sponte instruct the jury that it was required to compare alleged instances of Charles's handwriting to an authenticated exemplar to identify his handwriting. "[A] jury may make handwriting comparisons except under extreme or unusual circumstances." *United States v. Jenkins*, 785 F.2d 1387, 1395 (9th Cir. 1986). Charles does not cite to any precedent requiring the judge to specifically instruct the jury about how to make handwriting comparisons when it is called upon to do so. The jury was adequately made aware of its duty to make an affirmative identification of Charles's handwriting and did not require additional instruction.

6. The district court did not abuse its discretion in applying sentencing enhancements for use of sophisticated means, unlawful use of means of identification, and a loss in excess of one-million dollars. *See United States v. Treadwell*, 593 F.3d 990, 999 (9th Cir. 2010). The evidence adduced at trial supported the district court's findings that Charles unlawfully used means of identification, including social security and bank account numbers, on the application for the De La Style, Inc. line of credit, U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.7 (U.S. Sentencing Comm'n 2002); employed sophisticated means such as establishing shell corporations, *id.* n.6; and was responsible for losses totaling more than one million dollars, *id.* n.2. Finally, as the government correctly notes, the district court did not apply an enhancement for an aggravated or leadership role in the fraudulent scheme.

7. The district court erred by applying the 2004 sentencing guidelines. Charles was charged with and convicted of fraudulent conduct that occurred between June 27, 2001 and January 16, 2003. Because the "Ex Post Facto Clause bars the retroactive application of 'enactments which . . . increase the punishment for a crime after its commission,'" *United States v. Forrester*, 616 F.3d 929, 946 (9th Cir. 2010) (omission in original) (quoting *Garner v. Jones*, 529 U.S. 244, 249 (2000)), the district court should have applied the sentencing guidelines that were

6

"in effect on the date that the offense of conviction was committed," *id.* (quoting U.S.S.G. § 1B1.11); *see also Peugh v. United States*, 133 S. Ct. 2072, 2081–84 (2013). We leave to the district court the determination whether the 2001 or 2002 sentencing guidelines apply. Because we remand for re-sentencing based on the multiplicitous counts, we need not resolve whether this error was harmless. Likewise, we decline to address whether Charles's sentence was substantively unreasonable.

**AFFIRMED in part; REVERSED in part; REMANDED.**