**UNITED STATES of America, Appellee,**

v.

**Jennifer RODRIGUEZ, Defendant–Appellant.**

**Docket No. 96–1670.**

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1997.

Decided March 24, 1998.

Susan B. Marhoffer, White Plains, NY, for Appellant.

Evan T. Barr, Assistant United States Attorney, Southern District of New York, New York City (Mary Jo White, United States Attorney, John M. McEnany, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: MESKILL and CALABRESI, Circuit Judges, and KOELTL, District Judge.*

MESKILL, Circuit Judge:

Appeal from an October 25, 1996 judgment of conviction entered in the United States District Court for the Southern District of New York, Baer, *J.*, after a three day jury trial, finding appellant guilty of bank fraud in violation of 18 U.S.C. §§ 1344 and 2.

Reversed and remanded.

This appeal presents the question whether a conviction can be sustained under the federal bank fraud statute, 18 U.S.C. § 1344, where a defendant deposits fraudulently procured checks into multiple accounts at a federally insured financial institution and that institution takes those checks as a holder in

---

* Honorable John G. Koeltl, United States District Judge for the Southern District of New York, sitting by designation.

due course. We conclude that under these circumstances, with no other facts evincing an intent to victimize the financial institution, a jury could not have found that the defendant intended to victimize the institution by exposing it to an actual or potential loss. Accordingly, it was error to convict under the federal bank fraud statute. Further, because the evidence presented at trial also was insufficient to establish that the defendant engaged in a deceptive course of conduct, an essential element of the crime of federal bank fraud, we vacate the judgment of conviction and remand with instructions to dismiss the indictment.

## BACKGROUND

The record reveals the following undisputed facts. In early 1994, appellant Jennifer Rodriguez (Rodriguez) was a mother of seven who earned approximately $400 per week as a babysitter and home health care aide. With some of her children still residing in her native country of Trinidad, Rodriguez sought to bring them to New York and to purchase a home. But with income of only $400 per week, her wish would not soon become a reality.

A close friend, Marva Elcock (Elcock), offered Rodriguez a quick solution. As a senior accounts payable clerk at Thomas Publishing Company ("Thomas Publishing" or "Company"), Elcock devised a scheme to divert thousands of dollars from the Company's coffers to Rodriguez and to herself. The scheme commenced in January 1994 when Elcock installed Rodriguez as a Company vendor in the Company's computer data base and began entering phony vendor invoices into the Company's accounts payable system.[1] With each invoice, the Company generated a check payable to Rodriguez bearing the authorized signature of a Company assistant treasurer, Richard Teahan. Once a check was complete, Elcock arranged to deliver the check personally to Rodriguez in Brooklyn, or Rodriguez would send her 14 year old son Darryl to the Company's reception area for collection. Each check authorized Rodriguez to draw a specified amount

from the Company's account at Chemical Bank, a federally insured financial institution.

As Rodriguez and Elcock discussed, Rodriguez did not open a new bank account to facilitate the scheme but instead deposited the checks into her two existing savings accounts at Chemical Bank. Rodriguez decided to use her existing accounts at Chemical Bank because "she knew someone there." On the application forms for those accounts, Rodriguez listed Elcock as her employer. In all, Rodriguez negotiated approximately $65,015 worth of unauthorized checks drawn on the Company's account at Chemical Bank.

Rodriguez accessed the money through numerous automatic teller machine withdrawals and through personal checks. In furtherance of her desire to purchase a home, she retained a real estate attorney, applied for a $150,000 mortgage, and used $10,000 of the funds as a down payment on a house in Queens. Rodriguez also used some of the money to cover Elcock's mortgage arrears of $10,000 and to buy a $7,000 car for Elcock's brother, Garth Roberts. Further, Rodriguez periodically provided Elcock with small sums of cash on demand, approximately $5,000 in total.

The scheme unraveled in June 1994 when Richard Teahan conducted an internal company audit and became suspicious of the previously unknown Jennifer Rodriguez vendor account. Thereafter, the Company arranged for Postal Inspector Frederick Fairchild to investigate the account and soon Fairchild identified the scheme and Elcock as the person behind the phony invoices. Elcock was arrested and entered into a cooperation agreement with the government, which agreement required her to provide information regarding Rodriguez and to testify against her at trial.

On August 25, 1994, postal inspectors arrested Rodriguez and charged her with mail fraud in violation of 18 U.S.C. § 1341. Immediately following her arrest, Rodriguez voluntarily gave a statement. In her statement, Rodriguez admitted to accepting

---

**1.** Elcock also established two other fictitious vendor accounts, one in the name of Rodriguez's brother, Hugh Rodriguez, and one in the name of Elcock's mother-in-law, C. King.

Thomas Publishing checks from Elcock for deposit into her bank account. The checks were never mailed but were personally delivered either by Elcock or by Rodriguez's son Darryl. Further, Rodriguez stated that Elcock had approached her and asked her to accept the checks because, as Rodriguez suspected, "Elcock's husband was a user of narcotics" and, accordingly, "Elcock might have wanted the money removed from [him]." Rodriguez also stated that she returned all of the money to Elcock, except for $6,000 that Elcock owed her. In the statement, Rodriguez did not admit to having any knowledge of the scheme to defraud. Yet in apparent disregard for the contents of this statement, Postal Inspector Fairchild had acknowledged during the grand jury proceeding that Rodriguez had confirmed during the post arrest interview that she had received the Thomas Publishing checks *knowing* they were unauthorized.

On August 22, 1995, the government filed an indictment charging Rodriguez with a single count of bank fraud in violation of 18 U.S.C. §§ 1344 and 2. The indictment alleged that from January 1994 to May 1994, Rodriguez engaged in a scheme to negotiate approximately $65,015 worth of unauthorized checks drawn on the account of Thomas Publishing Company, maintained at Chemical Bank in New York City.

Trial commenced on April 29, 1996. During the trial, Rodriguez denied knowledge of the scheme and testified that her involvement with the checks began innocently when Elcock offered to lend her money to purchase a house—money that Elcock claimed the Company owed Elcock. However, because Elcock's husband was a drug addict, she did not feel safe putting the money into her own account. Accordingly, she asked to have the checks made payable to Rodriguez for deposit into Rodriguez's account. Further, Rodriguez explained to the jury that in June or July of 1993 she loaned Elcock $6,000 from her personal savings and considered the checks to be repayment for that debt, and on cross-examination admitted that at the time she opened the accounts at Chemical Bank, she falsely indicated on the

account applications that Elcock was her employer.

On May 1, 1996 the trial ended and the jury returned a verdict of guilty. On May 16, 1996, Rodriguez filed a motion to dismiss the indictment and for a new trial on grounds that Postal Inspector Fairchild had submitted incorrect or perjured testimony to the grand jury in connection with Rodriguez's post-arrest statement concerning her knowledge of the scheme. The court denied that motion, concluding that, even if it had the authority to dismiss the indictment, dismissal would be inappropriate. On October 9, 1996, Judge Baer sentenced Rodriguez to a term of three months incarceration at a community treatment center, to be followed by two years of supervised release, restitution in the amount of $35,000, and a mandatory $50 special assessment. Rodriguez is currently released on bail pending the disposition of this appeal.

## DISCUSSION

Rodriguez challenges her conviction, arguing that while she may have committed fraud against Thomas Publishing, the evidence adduced at trial is insufficient to establish the crime of federal bank fraud. Specifically, Rodriguez asserts that because she neither made fraudulent representations to Chemical Bank nor subjected it to an actual or potential loss, both of which are necessary elements of defrauding a bank, the indictment and the conviction were in error. Alternatively, Rodriguez avers that even if there is sufficient evidence to sustain the conviction, this Court nevertheless should invoke its supervisory powers and order the judgment vacated because Postal Inspector Fairchild provided "powerfully incriminating misinformation" to the grand jury.

The government responds that in accordance with our decisions in *United States v. Stavroulakis,* 952 F.2d 686 (2d Cir.), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992), and *United States v. Morgenstern,* 933 F.2d 1108 (2d Cir.1991), *cert. denied,* 502 U.S. 1101, 112 S.Ct. 1188, 117 L.Ed.2d 430 (1992), a defendant may be convicted of federal bank fraud even when the bank is not the immediate victim of a

scheme to defraud. All that is required, the government avers, is evidence of a deceptive course of conduct toward a bank in furtherance of the scheme. Accordingly, the government asserts that we should affirm the conviction because the jury reasonably could have found a deceptive course of conduct, that is, that Rodriguez attempted to mislead Chemical Bank into believing that she was entitled to the Thomas Publishing money. As the government articulates, Rodriguez's deceptive course of conduct was demonstrated by

> [evidence] that Rodriguez knew the checks had been issued against the account of Thomas Publishing Company without its authorization. Rodriguez endorsed these checks and presented them for payment at Chemical Bank, misrepresenting herself to be lawfully entitled to the funds. Rodriguez decided to deposit the checks at her own Chemical Bank branch because ... she knew someone there. Moreover, every account Rodriguez had opened at Chemical Bank falsely listed as her employer Marva Elcock, who could have deflected any telephone inquiry the bank may have wanted to make about the checks.

In responding to Rodriguez's alternative argument, the government argues that there was no impropriety in its grand jury presentation, and that in light of the petit jury's verdict, any error in grand jury proceedings was harmless beyond a reasonable doubt.

■ "An appellant challenging the sufficiency of the evidence bears a very heavy burden." *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir.1991) (citations and internal quotation marks omitted). "In reviewing this claim, the court must view the evidence in the light most favorable to the government and construe all possible inferences in its favor." *United States v. Amiel*, 95 F.3d 135, 141 (2d Cir.1996) (citation and internal quotation marks omitted). "If any rational trier of fact could have found the essential elements of the crime, the conviction must stand." *Id.*

**2.** Regardless of whether a defendant is charged under 18 U.S.C. § 1344(1) or (2), or both as was the case here, the government must show that the defendant engaged in a pattern of deceptive conduct designed to deceive a federally chartered

at 141–42 (citations and internal quotation marks omitted).

■ We conclude that based on the evidence presented at trial no rational trier of fact could have found the essential elements of the crime of federal bank fraud. Accordingly, we vacate the judgment of conviction without reaching Rodriguez's alternative argument. The federal bank fraud statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. "[T]he 'scheme to defraud' clause ... requires that the defendant engage in ... a pattern or *course of conduct designed to deceive* a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing it to *actual or potential loss.*" *Stavroulakis*, 952 F.2d at 694 (emphasis added).[2]

1. *Deceptive Course of Conduct*

■ Where the government alleges that a defendant, through misrepresentations, engaged in a deceptive course of conduct, the misrepresentations must be material in order to give rise to liability under the statute. *See United States v. Nash*, 115 F.3d 1431, 1436 (9th Cir.1997) (section 1344(2) requires proof of materiality); *see also United States v. Davis*, 989 F.2d 244, 247 (7th Cir.1993) (citing *United States v. Swearingen*, 858 F.2d 1555, 1556–58 (11th Cir.1988) (per curiam); *cf. United States v. Staniforth*, 971 F.2d

or insured financial institution. *See, e.g., Stavroulakis*, 952 F.2d at 694 (18 U.S.C. § 1344(1)); *Morgenstern*, 933 F.2d at 1113 (18 U.S.C. § 1344(2)).

**168**

1355, 1357–58 (7th Cir.1992)). A misrepresentation is material if it is capable of influencing a bank's actions. *Swearingen,* 858 F.2d at 1558. A course of conduct consisting of simply depositing checks into a bank account where the depositor knows that he/she is not entitled to the funds does not alone constitute false or fraudulent pretenses or representations. *United States v. Briggs,* 939 F.2d 222, 226 (5th Cir.1991); *see also Williams v. United States,* 458 U.S. 279, 284–85, 102 S.Ct. 3088, 3091–92, 73 L.Ed.2d 767 (1982) (no false statement is made because "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false' ").

■ Applying these principles to the instant case, there is no evidence that Rodriguez engaged in a deceptive course of conduct as to the bank. Assuming that Rodriguez actually knew the checks had been issued without Thomas Publishing's authorization, the act of presenting those checks to Chemical Bank for deposit and payment is not a deceptive course of conduct, as it alone cannot constitute false or fraudulent pretenses or representations to the bank. *See Briggs,* 939 F.2d at 226. Furthermore, while there was evidence presented at trial that Rodriguez used Chemical Bank because "she knew someone there," and such evidence might support the government's contention that in fact Rodriguez knew of the scheme to defraud, the evidence does not constitute a deceptive course of conduct and certainly is not an act of misrepresentation. Finally, although Rodriguez falsely stated in her bank account applications that Elcock was her employer, the statement, while false, is not a material misrepresentation. There simply was no evidence adduced at trial that the misrepresentation could have, or did influence Chemical Bank's decision to allow Rodriquez to reach the funds at issue. *See Swearingen,* 858 F.2d at 1558. Consequently, because no rational trier of fact could have found that Rodriguez engaged in a deceptive course of conduct as to the bank, an

essential element of the crime of federal bank fraud, the conviction cannot stand.

### 2. *Actual or Potential Loss*

■ We agree with the government that our decisions in *Stavroulakis* and *Morgenstern* teach that a defendant may be convicted of federal bank fraud even where a bank is not the immediate victim of a scheme to defraud. However, a defendant may not be convicted of federal bank fraud unless the government is able to offer proof that the defendant, through the scheme, intended to victimize the bank by exposing it to an actual or potential loss. *See Stavroulakis,* 952 F.2d at 694; *id.* at 694–95 (where defendant traffics in blank stolen checks he intends to victimize bank within meaning of federal bank fraud statute because checks eventually would be presented to a drawee bank for payment over a forged signature, which exposes the bank to a real loss); *see also Morgenstern,* 933 F.2d at 1114 (bank properly viewed as intended victim of fraudulent scheme where the bank succumbs to the depositor's fraudulent conduct and is potentially victimized by exposure to civil liability).

The requirement that the defendant must have intended to victimize a federally insured financial institution by exposing it to actual or potential loss arises from the statute's purpose of protecting the federal government's interest, as an insurer of financial institutions, and not others who may have been fraudulently induced to write checks. *Davis,* 989 F.2d at 246–47. As we stated in *United States v. Blackmon,* 839 F.2d 900, 906 (2d Cir.1988), "[w]here the victim is not a bank and the fraud does not threaten the financial integrity of a federally controlled or insured bank, there seems no basis in the legislative history for finding coverage under [the statute]." In this regard, where a bank takes a check as a holder in due course, under most circumstances [3] the bank cannot be victimized because the bank takes that check free of any defenses or claims and is fully entitled to the proceeds thereof. *See Davis,* 989 F.2d at 247 (where a depositor

---

3. We recognize that the Uniform Commercial Code provides for a number of defenses to the holder in due course doctrine that could, under circumstances not presented here, defeat a drawee bank's status as a holder in due course and expose that bank to a loss. *See* UCC § 3–305.

obtained an Internal Revenue Service check by false pretenses, a negotiable instrument that neither was forged nor stolen, and then deposited that check into his bank account, the depositor did not commit bank fraud because once the check cleared, the bank took that check as a holder in due course, precluding the potential that the bank could be victimized by a loss); *see also* UCC § 3-305.

In the present case, there was no evidence presented at trial that Rodriguez intended to victimize Chemical Bank by exposing it to an actual or potential loss. As in *Davis,* the checks that Rodriguez presented for deposit were not forged or stolen and were actually endorsed by a Thomas Publishing authorized signatory, Richard Teahan. The checks were made payable to Rodriguez and upon presentment, duly signed by her. Under these circumstances, Chemical Bank took the checks as a holder in due course, free of any claims or defenses had Thomas Publishing decided to institute an action against Chemical Bank. Accordingly, under these facts, with no other evidence adduced at trial indicating that Rodriguez intended to victimize Chemical Bank by exposing it to an actual or potential loss, a jury could not have found that essential element of the crime of federal bank fraud.

## CONCLUSION

We conclude that because there was no evidence that Rodriguez intended to victimize Chemical Bank by exposing it to an actual or potential loss, it was error to convict her under the federal bank fraud statute. Further, because the evidence presented at trial also was insufficient to establish that Rodri-,guez engaged in a deceptive course of conduct, an essential element of that crime, we vacate the judgment of conviction and remand with instructions to dismiss the indictment.