**UNITED STATES of America,
Appellee,**

v.

**Susan Rouse MADAKOR,
Defendant–Appellant.**

**Docket No. 01–1229.**

United States Court of Appeals,
Second Circuit.

Jan. 23, 2002.

Daniel H. Murphy, II, Law Office of Daniel H. Murphy, II, New York, NY, for Appellant.

Gary L. Stein, Assistant United States Attorney, New York, NY, for James Co-

mey, Acting United States Attorney for the Southern District of New York, for Appellee.

Present SACK, KATZMANN, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court, entered on April 24, 2001, be, and it hereby is, AFFIRMED.

Defendant–Appellant Susan Rouse Madakor appeals from a judgment of the United States District Court for the Southern District of New York (Shirley W. Kram, *Judge*) convicting her, after a jury trial, of one count of bank larceny in violation of 18 U.S.C. § 2113(b) and one count of bank fraud in violation of 18 U.S.C. § 1344.

Between February 1998 and October 1999, several member states of the United Nations mistakenly wired funds totaling more than $700,000 to Madakor's account at Chase Manhattan Bank, N.A. ("Chase"). The intended recipient of these funds was the U.N. Environmental Program ("UNEP"), which also maintains an account at Chase, to which it instructed the U.N. member states to wire their annual contributions. The account numbers of UNEP and Madakor differed by one digit. Because of an oft-repeated error, thirteen separate wire transfers intended for UNEP were credited to Madakor's account. Each time, she received credit advices from Chase notifying her of the deposits.

Madakor, a receptionist who earned approximately $23,500 per year, did not contact Chase in order to inquire into the source of this newfound wealth. She used the funds to pay off existing credit card debts, purchase a business, open an ac-

count for her son, and buy thousands of dollars worth of consumer goods. When a representative from Chase inquired about the unusual influx of funds, Madakor told him that she had inherited the money from her father and also saved it from her prior career as a model. She remarked to her boyfriend that she "had saved up from modeling" and also made the money "in real estate."

Chase discovered one of the mistaken deposits in the Summer of 1999. After Madakor refused to authorize Chase to debit her account for the amount of the mistaken credit, Chase investigated Madakor's account and realized the full extent and magnitude of the thirteen mistaken wire transfers. On November 3, 1999, Chase froze Madakor's accounts. In December 1999, Madakor responded by suing Chase in Supreme Court, New York County, seeking an order from the court directing Chase to release the funds. In support of her suit, she submitted an affidavit in which she swore that she believed she had won the funds in an "International Lottery," which she allegedly had entered in 1997. On January 4, 2000, she repeated this claim during an interview on the television news program "Dateline/NBC," which aired a segment on her lawsuit.

The government indicted Madakor on April 7, 2000 for, *inter alia,* bank fraud and bank larceny. Following a jury verdict, the district court entered a judgment of conviction and sentenced her to twenty-four months' imprisonment.

The defendant challenges her convictions on two grounds: (1) that the district court erred by failing to note that under New York law the funds "misdirected to the Madakor account" became the "funds of Ms. Madakor," Appellant's Br. at 20, and a person cannot steal from herself; and (2) that the district court erred by

admitting into evidence Madakor's affidavit claiming that she won the funds in an "International Lottery" because as a matter of law the affidavit was not "material" in the sense required to satisfy the "material false statement" element of bank fraud.

■ Because Madakor did not raise either of these challenges in her motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, thereby waiving them, *see United States v. Dandy,* 998 F.2d 1344, 1356–57 (6th Cir.1993) (noting that "where a Rule 29 motion is made on specific grounds, all grounds not specified are waived"), we now review these asserted grounds for acquittal under the "plain error" standard. *See* Fed. R.Crim.P. 52(b); *United States v. Gore,* 154 F.3d 34, 43 (2d Cir.1998) ("A 'plain' error is 'an error so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.' ") (quoting *United States v. Tillem,* 906 F.2d 814, 825 (2d Cir.1990)).

■ Madakor's first argument fails because New York law clearly recognizes the "mistake of fact" doctrine, and "money paid under a mistake of fact may be recovered back." *Banque Worms v. BankAmerica Int'l,* 77 N.Y.2d 362, 366–67, 570 N.E.2d 189, 191–92, 568 N.Y.S.2d 541, 543–44 (1991) (internal quotation marks and citation omitted); *see Mfrs. Hanover Trust Co. v. Chem. Bank,* 160 A.D.2d 113, 117, 559 N.Y.S.2d ·704, 707 (1st Dep't 1990) (applying the mistake-of-fact doctrine to uphold recovery of funds mistakenly credited to the wrong account). The funds mistakenly credited to Madakor's account therefore did not become the "funds of Ms. Madakor."

■ Madakor's second argument relies on *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), in which the Supreme Court held that the "materiality" of a false or fraudulent statement is an element of bank fraud, *id.* at 25, 119 S.Ct. 1827. She contends that the affidavit she submitted in the state-court litigation that she initiated was not material because a material misstatement must have "a natural tendency to influence, or [be] capable of influencing, the decision of the decision-making body to which it [was] addressed," *id.* at 16, 119 S.Ct. 1827 (citations and internal quotation marks omitted); *see also United States v. Rodriguez,* 140 F.3d 163, 168 (2d Cir.1998) (noting in the context of bank fraud that "[a] misrepresentation is material if it is capable of influencing the bank's actions"). Madakor argues that because Chase would be unlikely to unfreeze her accounts based on the state-court affidavit, this fraudulent statement was not "capable of influencing" Chase's actions.

■ This argument likewise fails. As the Eleventh Circuit has noted, a false or fraudulent "statement need not have exerted actual influence, so long as it was *intended to do so and had the capacity to do so.*" *United States v. Gregg,* 179 F.3d 1312, 1315 (11th Cir.1999) (emphasis added). Madakor plainly intended her affidavit to influence Chase's actions; she submitted it in the course of litigation she initiated in order to *force* Chase to unfreeze her accounts. While it may be true that Chase would be unlikely to unfreeze Madakor's accounts after discovering the error in this case, it does not follow that the affidavit lacked the "capacity" to influence Chase's actions; it only implies that that capacity may have been low. The district court therefore did not err by admitting Madakor's affidavit for consideration by the jury.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.