UNITED STATES of America,
Appellant,

v.

Anthony D. AUTORINO,
Defendant–Appellee.

No. 03–1428.

United States Court of Appeals,
Second Circuit.

Argued: March 4, 2004.

Decided: Aug. 19, 2004.

Leonard C. Boyle, Assistant United States Attorney for the District of Connecticut (John H. Durham, Deputy United States Attorney, Jeffrey A. Meyer, Assistant United States Attorney, Rebecca Ebinger, law student intern, on the brief), New Haven, CT, for appellant.

Stanley A. Twardy, Jr., Day, Berry & Howard LLP (John B. Nolan, Edgardo Ramos, Michael P. Shea, on the brief), Stamford, CT, for defendant-appellee.

Before: WALKER, Chief Judge, LEVAL, Circuit Judge, and GLEESON, District Judge.*

LEVAL, Circuit Judge.

This appeal is brought by the government from an order of the United States District Court for the District of Connecticut (Ellen Bree Burns, *J.*), dismissing the indictment on the ground that it failed to plead an offense. Anthony D. Autorino was indicted by a federal grand jury on counts of wire fraud, bank fraud, and making false statements, in connection with two stock certificates he pledged to the Federal Deposit Insurance Corporation ("FDIC") as security for notes payable to the FDIC. With respect to Counts One through Five the indictment alleges that, with intent to defraud the FDIC, Autorino later falsely reported to the issuer of the hypothecated stock that the stock certificate had been lost, with the consequence

---

\* The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

that the issuer cancelled the original certificate and replaced it with a new certificate, which Autorino then sold. Counts Six and Seven, which relate to a different transaction, allege that Autorino falsely reported to the issuer the loss of a stock certificate, so caused the issuer to cancel the certificate, received a replacement certificate, and then, with intent to defraud, pledged the original certificate to the FDIC as security for a loan without revealing that the certificate being pledged had been cancelled and replaced. The district court dismissed all the counts. The court concluded that the alleged scheme was incapable of defrauding the FDIC because, as a bona fide purchaser of the certificates, the FDIC was protected against loss by provisions of the Uniform Commercial Code ("UCC"). In our view, the indictment adequately alleges the crimes charged. We accordingly vacate the judgment and reinstate the dismissed charges.

## Background

The indictment alleges that Autorino devised a scheme to defraud the FDIC in two transactions involving defaulted loans for which Autorino was personally liable. In the first transaction, which is the subject of Counts One through Five, Autorino executed a note on September 25, 1992, payable to the FDIC as part of a settlement of more than $5 million in defaulted loans made by Central Bank to Shared Technologies, Inc. ("STI") and personally guaranteed by Autorino, who was president and part owner of the borrower. Central Bank had failed, and the FDIC had taken over its business. Under the terms of the note, Autorino promised to pay the FDIC $675,000 by September 30, 1997, and, as security, pledged and delivered certificate number 1315 representing 400,000 shares of STI stock. Autorino agreed to preserve the value of this collateral and notify the FDIC in the event of any change in its value.

In July 1993, it is alleged, Autorino submitted to STI a "Lost Security Affidavit and Indemnification Agreement," in which he falsely stated that the original certificate "has been lost or destroyed and cannot be found" and that he had not assigned or transferred it. In response, STI caused its transfer agent to cancel stock certificate 1315 and deliver a replacement certificate to Autorino. Autorino did not notify the FDIC of these events.

Counts Six and Seven allege that Autorino employed a similar tactic in the second transaction. Another business venture of Autorino's—ADS Realty, a partnership in which he was a principal—defaulted on loans made by the Sentinel Bank and the New Bank of New England. The loans were secured by Autorino's stock certificate number 0959, representing 253,000 shares of STI stock. The lending banks were then taken over by the FDIC. In July 1996, in settlement of a lawsuit initiated by the FDIC, the FDIC agreed to a five-year extension of a $500,000 credit in exchange for Autorino's note and his continued pledge of certificate 0959. The indictment alleges that Autorino had previously made a false declaration to STI that certificate 0959 had been lost, thus causing the certificate to be cancelled and replaced by a new certificate. With intent to defraud, Autorino delivered the cancelled certificate to the FDIC as security without informing it of the fraudulent declaration of loss and the cancellation.

In March 1998, Autorino sold his shares in STI, including those represented by the pledged certificates, to Moonlight Acquisition Corporation ("Moonlight"), as part of its purchase of "all the outstanding stock in" STI. In June 1999, after Autorino failed to repay the note secured by certifi-

cate 1315, the FDIC discovered the previously concealed facts.

In connection with certificate 1315, in Counts One through Five, the indictment charges Autorino with three counts of wire fraud under 18 U.S.C. § 1343 (based on wire communications made in the course of inducing STI to replace the stock certificates falsely reported to be lost and the subsequent sale of the stock to Moonlight); one count of bank fraud, 18 U.S.C. § 1344 (based on Autorino's scheme to defraud the FDIC); and one count of making a false statement to the FDIC, 18 U.S.C. § 1007. In connection with certificate 0959, Counts Six and Seven allege false statements to the FDIC, in violation of 18 U.S.C. §§ 1007 and 1014, in misrepresenting the status of the certificate when he pledged it as collateral for the second promissory note, by failing to advise of its prior cancellation and replacement.

Autorino moved to dismiss all counts of the indictment. Fed.R.Crim.P. 7, 12. The district court granted the motion. *United States v. Autorino*, 307 F.Supp.2d 370, 373 (D.Conn.2003). The court ruled that under § 8–405(3) of the UCC, as a bona fide purchaser of the pledged certificates, the FDIC was entitled to have STI register the transfer of the cancelled certificates to it. The court concluded that the pledged certificates were not effectively "cancelled," nor were they "valueless" as the indictment alleged, with the consequence that the indictment failed to state an offense. *Id.* at 377. The court dismissed all seven counts. The government brings this appeal.

## Discussion

We believe the indictment adequately pleads prosecutable offenses in all seven counts. Even assuming that the UCC provided the FDIC with remedies that might have given it certain protections against aspects of the alleged fraud, the indictment nonetheless alleges a scheme to defraud the FDIC and the making of materially false statements to it for the purpose of influencing its actions.

This is most easily seen as to Counts Six and Seven, which related to stock certificate 0959. Those charges were brought under 18 U.S.C. §§ 1007 and 1014, whose text is set out in the margin.[1]

Section 1007 can be satisfied by the (i) knowing (ii) making of a false statement[2] (iii) for the purpose of affecting an action of the FDIC. Section 1014 can be satisfied by proof of virtually the same elements— the (i) knowing (ii) making of a false statement (iii) for the purpose of affecting an

---

**1.** 18 U.S.C. § 1007 provides:

Whoever, for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation, knowingly makes or invites reliance on a false, forged, or counterfeit statement, document, or thing shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014 penalizes false statements made to a variety of federal financial agencies, including the FDIC. It provides in part:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ...

any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, ... [or] the Federal Deposit Insurance Corporation ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**2.** As to whether the false statement must be material, see footnote 3.

action of the FDIC (iv) upon a change or extension of a loan.

■ According to the allegations of Counts Six and Seven, Autorino's false claim of the loss of certificate 0959, and his consequent receipt of a replacement certificate, had occurred prior to his settlement agreement with the FDIC. The terms of his agreement with the FDIC included that the FDIC would grant Autorino five years to pay defaulted debt in the amount of $500,000, conditioned on Autorino's continued pledge of stock certificate number 0959. The false statement necessary to satisfy §§ 1007 and 1014 lies in Autorino's concealment, while pledging the stock certificate, of the fact that he had fraudulently caused the certificate to be cancelled and replaced.[3] According to the allegations, Autorino knowingly made this false statement for the purpose of inducing the FDIC to agree to the five-year extension of a half-million dollar loan and to forbear foreclosing on certificate 0959. The allegations thus included a false statement, knowingly made for the purpose of influencing the FDIC's actions, with respect to the extension of the term of a loan. The allegations of Counts Six and Seven fully satisfied the requirements of §§ 1007 and 1014.

Through a slightly different line of analysis, we have no difficulty concluding that Counts One through Five are also adequately pleaded. These charges relate to certificate number 1315 and alleged violations of 18 U.S.C. §§ 1007, 1343, and 1344. The facts with respect to these counts, as noted, differ from Counts Six and Seven in that the fraudulent claim of loss, inducing STI to cancel the pledged certificate and issue a replacement certificate, occurred after Autorino's delivery of the pledged certificate to the FDIC.

■ As to Count Five, the elements of § 1007 are easily satisfied by the allegations. The false statement knowingly made consisted of an omission—Autorino's failure to advise the FDIC, as required by the pledge agreement, of the subsequent cancellation of the pledged certificate, the issuance of a replacement certificate, and the sale of the stock represented by the certificate to Moonlight. This false statement was made "for the purpose of influencing ... the action of the [FDIC]" by causing it not to interfere with the fraudulent sale of the pledged stock to Moonlight and not to call the loan or foreclose on the collateral.

As for Counts One through Four, the requirements of §§ 1343 and 1344 are also satisfied. Sections 1343 and 1344, which are set forth in relevant part in the margin,[4] are for purposes of this case substan-

---

**3.** The Supreme Court in *United States v. Wells*, 519 U.S. 482, 489–92, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), ruled that a false statement need not be material to the decision at issue to give rise to a violation of § 1014. Two of the rationales for the Court's decision—the absence of any mention of materiality in the statute and the conclusion that the term "false statement" at common law did not carry a materiality requirement that would be incorporated into its use in the federal criminal code—suggest that materiality may not be necessary under § 1007 either. We need not decide that question. The false statement was undoubtedly material because it can be inferred that the FDIC would not have agreed to grant Autorino five years of further credit secured by the certificate had it known that Autorino, by his fraudulent claim of loss, had caused the certificate to be cancelled and replaced.

**4.** 18 U.S.C. § 1343 provides:

Whoever, having devised ... any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire ... in interstate or foreign commerce, any writings ... for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial

tially identical. Section 1343 applies to anyone who, (i) having devised a scheme to defraud, (ii) transmits any communication by wire in interstate commerce (iii) for the purpose of executing the scheme. The maximum punishment is increased if the violation affects a financial institution. Section 1344 applies to anyone who (i) knowingly (ii) executes a scheme to defraud (iii) a financial institution.

■ Autorino's scheme to defraud, which is the crucial element of these two statutes, involved his concealed simultaneous use of the same shares of stock for two incompatible purposes—one being their retention by the FDIC as security for a loan to him, the second being his sale of the same stock to Moonlight. The scheme was apparently intended to defraud both the FDIC and the purchaser of the shares (which had contracted to purchase *all* of the STI stock). It was intended to cause the FDIC not to interfere with the sale of the pledged stock to Moonlight, not to call the loan, and not to foreclose on the certificate. Furthermore, it would harm the FDIC by rendering useless the certificate it held as security unless and until the FDIC took legal steps, involving the remedies of the UCC, to restore the certificate's validity.

Autorino contends that his plot cannot be deemed a scheme to defraud the FDIC because the FDIC, as a bona fide purchaser, was protected against loss by the remedy available under UCC § 8–405(3).[5] *See, e.g., United States v. Pierce,* 224 F.3d 158, 165 (2d Cir.2000). We disagree. First, as noted above, the cancellation of the FDIC's stock certificate by the issuer's transfer agent would render it valueless until the FDIC engaged lawyers and took the necessary steps to invoke the UCC remedy to restore recognition of the cancelled certificate. Depending on the value of the STI shares at the time the FDIC discovered the perpetration of the fraud, it was conceivable that the FDIC would find that the value of the pledged but compromised security would not justify the expense of taking the legal steps necessary to the restoration of the cancelled certificate.

But even assuming Autorino were correct in contending that a plot cannot as a matter of law constitute a scheme to defraud if the intended victim possesses a legal remedy that will protect it against loss, his argument is still defective. Even

institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

5. Section 8–405 of the UCC provides in part: (2) If the owner of a certificated security claims that the security has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificated security or, at the option of the issuer, an equivalent uncertificated security in place of the original security if the owner ... so requests before the issuer has notice that the security has been acquired by a bona fide purchaser; (3) If, after the issue of a new ... security, a bona fide purchaser of the original certificated security presents it for registration of transfer, the issuer shall register the transfer ....

UCC § 8–405 (1991). Although this provision was amended in 1994, the parties do not contest the district court's decision to apply the pre–1994 version of the text on grounds that the pre–1994 version was in effect in all jurisdictions and at all times relevant to this case.

if the FDIC availed itself of the UCC remedy, Autorino's scheme nonetheless exposed it to a further risk of loss. As the result of the scheme, the FDIC's security would be diluted and become intrinsically less valuable. When pledged, certificate 1315 represented a certain percentage of the outstanding stock of the STI. Once the same shares had been resold to Moonlight, even assuming the restoration of the FDIC's previously cancelled shares, the certificate now represented a smaller percentage of STI's common stock (without STI having received consideration for the additional stock) and was thus intrinsically less valuable. The pleaded facts support the inference that Moonlight was a bona fide purchaser and was entitled to the recognition of its purchase of the 400,000 shares represented by certificate 1315 and the 253,000 shares represented by certificate 0959. Accordingly, Autorino's fraudulent acts increased the total number of STI shares by 653,000 and correspondingly reduced the equity held by the FDIC as security for the loans.

Thus, the crime was likely to frustrate and impair the FDIC's ability to realize the benefit of the security interest pledged to it. We see *no reason why these facts*, as alleged in the indictment, do not satisfy §§ 1343 and 1344, as a scheme to defraud the FDIC.[6]

■ In our view the district court was led to an erroneous conclusion by superfluous, exaggerated pleading in the indictment. In addition to alleging that Autorino caused certificates 1315 and 0959 to be cancelled, the indictment alleges that Autorino's actions caused the certificates to become valueless. In paragraph 21 of the general allegations, the indictment states that the cancellation of certificate 1315 "depriv[ed] the FDIC of the value of the STI stock represented by that certificate." And as to Count Six, the indictment alleges that the cancellation of certificate 0959 "rendered [it] valueless." Because § 8–405(3) of the UCC permitted the FDIC, as a bona fide purchaser, to have the cancelled certificate restored, the court concluded that the cancellation was only temporary, and the certificate was not rendered valueless. However, nothing turned on whether the cancellation engineered by Autorino's scheme rendered the certificates valueless. Even if the hypothecated certificates were not absolutely "valueless," their value as security was nonetheless compromised. At most, the "valueless" allegation is harmless surplusage. The indictment, as explained above, properly alleges a scheme to defraud without reference to the certificates being valueless. The government "need not prove allegations of an indictment that are 'surplusage' to the essential elements of the offense[s] charged." *United States v. Richards*, 302 F.3d 58, 67 n. 6 (2d Cir. 2002) (government was not required to prove drug quantity alleged in the indictment to convict on lesser drug quantity found by jury); *see also United States v. Miller*, 471 U.S. 130, 144–45, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (amendment to drop from indictment allegations which are unnecessary to an offense not unconstitutional). Although the district court may well have been correct that the scheme would not render the certificates valueless, that error in the pleading did not render the indictment defective. It did not negate the other, appropriately pleaded allegations, which satisfactorily allege violation of the pertinent sections.

6. Although we think it unnecessary to reach this question, we note further that Count Three appears to allege a valid scheme to defraud the purchaser of the stock punishable by § 1343, even if for some reason it fails to invoke properly the higher penalties applicable "[i]f the violation affects a financial institution." 18 U.S.C. § 1343.

Autorino seeks to sustain the district court's ruling by invoking our rulings *United States v. Laljie*, 184 F.3d 180 (2d Cir.1999), and *United States v. Rodriguez*, 140 F.3d 163 (2d Cir.1998). These cases do not support Autorino's contention.

In *Rodriguez*, the defendant engaged in a scheme to defraud a friend's employer. The employee-friend caused Rodriguez's name to be entered in the list of the employer's vendors and then caused company checks to be issued payable to Rodriguez, ostensibly in payment for the company's purchases. Rodriguez deposited these checks in her bank account (which happened to be at the drawee bank), subsequently withdrawing the proceeds and sharing them with the friend. Although Rodriguez was originally charged with mail fraud under 18 U.S.C. § 1341, the prosecution was unable to find mailings to serve as a jurisdictional predicate. She was ultimately charged with bank fraud under § 1344, with allegations that the scheme intended to defraud the drawee bank. We reversed the conviction, concluding that there was no evidence that the defendant either intended to victimize the bank or exposed it to actual or potential loss. Although procured through fraud, the checks were genuine checks of the employer. They were neither forged nor altered. The drawee bank accepted them as a holder in due course. No claim could have been asserted against it.

Our opinion in *Laljie* involved similar facts. The defendant Laljie was the secretary of Schmeelk, the victim of the fraud. Schmeelk trusted the defendant and signed checks she placed in front of him without inspection or question, even where the payee had not been filled in. The defendant had caused Schmeelk to sign checks by which she diverted over $500,000 to her benefit. Her conviction was sustained on numerous counts of mail

fraud and bank fraud. We did however overturn two counts of bank fraud under § 1344, involving two checks payable to New Sights, Inc., a company owned by the defendant's husband. Schmeelk's signature on the checks was genuine and the checks had not been altered in any way, either as to amount or payee. Under the circumstances, we found that the defendant's scheme neither intended nor inflicted any loss or potential loss on the drawee bank. Because the checks were neither forged nor altered, but were in all respects genuine (notwithstanding that they had been procured by deception), the drawee bank was a holder in due course and had no responsibility to perceive that the owner of the account had been deceived in signing them. The bank incurred no risk of liability as the result of Laljie's fraud on her employer.

Autorino argues on the basis of these opinions that "when a bank takes as a holder in due course it cannot be victimized and, therefore, the [bank] fraud statute[] cannot be violated." [Red 22–23] That distorts the significance of the opinions. We neither said nor implied that bank fraud never lies where the bank takes as a holder in due course. The reason those bank fraud convictions could not stand was that the fraudulent schemes neither intended nor inflicted actual or potential loss or harm on the drawee bank. In contrast, here, as explained above, notwithstanding the FDIC's potential ability to reduce the harm by resort to remedies granted to a holder in due course by the UCC, Autorino's fraudulent scheme was both intended to, and could easily, cause harm to the FDIC's security interest.

We find that the indictment adequately pleads criminal violations of §§ 1007, 1014, 1343 and 1344. We therefore vacate the judgment of the district court, reinstate the indictment, and remand for further proceedings.

## Conclusion

The judgment is VACATED and the case REMANDED for further proceedings.