22-2857-cr
*United States v. Vidal*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of February, two thousand twenty-four.

PRESENT:
> ROBERT D. SACK,
> REENA RAGGI,
> JOSEPH F. BIANCO,
>     *Circuit Judges.*

---

UNITED STATES OF AMERICA,

    *Appellee,*

v.                                                                                      22-2857-cr

EDUAR VIDAL, a/k/a SEALED DEFENDANT 1,

    *Defendant-Appellant.*

---

FOR APPELLEE:
    T. JOSIAH PERTZ, Assistant United States Attorney (Jonathan L. Bodansky and Nathan Rehn, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:
    ROBERT P. PREUSS (Camille M. Abate, *on the brief*), Abate & Preuss, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise Cote, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on October 21, 2022, is **AFFIRMED**.

Defendant-Appellant Eduar Vidal appeals from a judgment of conviction entered after a jury trial at which he was found guilty of bank fraud, in violation of 18 U.S.C. § 1344, and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1344 and 1349. Vidal was sentenced principally to forty-eight months' imprisonment, followed by three years of supervised release. On appeal, Vidal argues that: (1) the trial evidence was insufficient to support his convictions; (2) the district court committed reversible error in admitting evidence of Vidal's alleged involvement in fraudulent credit card transactions; and (3) the district court committed reversible error in allowing the government to introduce certain hearsay statements as coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) without holding a hearing under Federal Rule of Evidence 104(a). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I.      Sufficiency of the Evidence

Vidal challenges the sufficiency of the evidence adduced at trial, arguing that the government failed to prove that he made, or was aware of, any material misrepresentation to a financial institution. We review a challenge to the sufficiency of the evidence *de novo*. *United States v. Requena*, 980 F.3d 30, 43 (2d Cir. 2020). A defendant who makes such a challenge "bears a heavy burden." *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022). In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible

2

inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We must affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Silver*, 864 F.3d 102, 113 (2d Cir. 2017) (internal quotation marks and citation omitted) (emphasis in original).

"[B]ank fraud is defined as the knowing execution of 'a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.'" *United States v. Calderon*, 944 F.3d 72, 91 (2d Cir. 2019) (quoting 18 U.S.C. § 1344). "[P]roof of the violation of either subsection is sufficient to support a conviction." *United States v. Crisci*, 273 F.3d 235, 239 (2d Cir. 2001). Both subsections require the government to "prove that the defendant in question engaged in a deceptive course of conduct by making *material* misrepresentations." *Calderon*, 944 F.3d at 85 (emphasis in original). Although Section 1344(1) requires the intent to defraud a financial institution, Section 1344(2) only requires the intent to obtain bank property. *Loughrin v. United States*, 573 U.S. 351, 355–57 (2014); *accord United States v. Bouchard*, 828 F.3d 116, 124 (2d Cir. 2016). Accordingly, Section 1344(2) covers situations in which a defendant, intending to obtain bank property, makes a false representation to a third party, rather than the bank itself. *See, e.g.*, *Shaw v. United States*, 580 U.S. 63, 71 (2016) ("[Section 1344(2)] applies to a circumstance in which a shopper makes a false statement to a department store cashier in order to pay for goods with money 'under the custody or control of a financial institution'. . . ."); *Loughrin*, 573 U.S. at 363 n.6 ("[W]hen the defendant has the requisite intent to acquire bank property, his presentation

3

of a forged or altered check to a third party satisfies § 1344(2)'s 'means' requirement.").

After reviewing the trial record, we find Vidal's challenge to the sufficiency of the evidence unpersuasive. Drawing all permissible inferences and resolving all issues of credibility in favor of the government, the evidence at trial established that Vidal endorsed and cashed numerous auto loan checks, falsely representing that funds withdrawn from the lending banks would be used to finance the purchase of used cars from his dealership. In particular, the documentary evidence showed that Vidal endorsed and cashed eighteen checks, worth more than $630,000, that various lenders had made out to his used car dealership, E&V Auto Sales. Each check contained a "restrictive endorsement," whereby Vidal, by endorsing the check, falsely represented that he would: (1) use the funds as payment for a particular borrower's purchase of a particular vehicle, identified by make, model, and vehicle identification number; (2) register that vehicle in the borrower's name; and (3) place a first-priority lien on the vehicle in the lender's name.[1] Vidal also falsely represented that he would return the check or its proceeds to the lender if he failed to complete the described transaction.

The fraudulent nature of the scheme was apparent based upon, *inter alia*, the fact that the eighteen checks endorsed and cashed by Vidal identified, in total, no more than five vehicles as objects of the sale. For example, in March 2016, Vidal endorsed and cashed two checks—totaling $39,855—for the same 2016 Honda Accord, which he never actually sold. Both checks identified Ana Batista as the borrower. At trial, Batista testified that she never intended to purchase a car

---

[1] Certain checks also included in the "restrictive endorsement" that the endorser certified that no other financing was involved in the transaction involving a particular vehicle.

4

from Vidal, and that the auto loans were part of a scheme to get cash. She explained that she had hired Carlos Felix, the owner of Best Credit USA, to help her improve her credit, and that, "even though [she] did not want a car," Felix suggested taking out auto loans because "they could turn the loan into cash." App'x at 478. Batista met Felix and Vidal at E&V Auto Sales "to sign a document for the sale of a vehicle to get the process started" so that Vidal "could turn the car loan money into cash." App'x at 484. At that meeting, Batista told Vidal that she "did not intend to buy a car." App'x at 486. She testified that Vidal subsequently cashed the checks for two auto loans she had received, withholding a portion of the cash for Felix and himself. Vidal also endorsed and cashed three checks—totaling $100,893.75—for the same 2014 Jeep Grand Cherokee. All three checks identified Gloria Duarte as the borrower. At trial, Duarte likewise testified that, even though she had no intention of buying a car, Felix applied for auto loans on her behalf and gave the checks to Vidal "so he could take care of the cashing process." App'x at 570.

Contrary to Vidal's suggestion, his fraudulent conduct was not analogous to *United States v. Rodriguez*, 140 F.3d 163, 168 (2d Cir. 1998), where we held that the defendant's mere act of presenting checks to a bank for payment did not, by itself, show that the defendant had "engaged in a deceptive course of conduct" for the purpose of establishing bank fraud, even if the defendant knew that he or she was not entitled to the funds. Here, as noted above, the checks contained specific representations in the restrictive endorsements, which a rational jury could find Vidal knew were false at the time he endorsed the checks and obtained the lenders' funds. These false representations were material, as the lenders' disbursement of funds was conditioned on Vidal's commitment to sell particular vehicles. *Cf. id.* ("There simply was no evidence adduced at trial that [any] misrepresentation could have, or did, influence [the bank's] decision to allow [defendant]

5

to reach the funds at issue.").   Moreover, although Vidal argues that the alleged bank fraud scheme was complete when the lenders issued the checks based on fraudulent loan applications that Vidal did not fill out, the evidence supported a finding that this scheme was not complete until Vidal endorsed the checks, with Vidal's corresponding misrepresentations, and he received the funds. *See United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015) ("[A] scheme to defraud is not complete until the proceeds have been received." (internal quotation marks and citation omitted)).

In sum, drawing all permissible inferences and resolving all issues of credibility in favor of the government from the trial evidence, a rational jury could find that Vidal knowingly misrepresented that the auto loan checks would be used to purchase specific vehicles so that he could cash the checks and obtain the lenders' funds for himself.   A rational jury could also find, based on Batista's and Duarte's testimony, that Vidal knew that Felix was taking out auto loans for individuals with no intention of purchasing a car and that Vidal knowingly joined and participated in the scheme to turn the auto loans into cash.   *See United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) ("The conspiracy count[] . . . required the Government to present evidence from which it can be reasonably inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.").   Accordingly, Vidal's challenge to the sufficiency of the evidence is without merit.

## II.    Evidentiary Rulings

Vidal also argues that the district court erred in admitting (a) evidence of his involvement in fraudulent credit card transactions, and (b) coconspirator statements without a hearing under Federal Rule of Evidence 104(a).   We address each argument in turn.

6

### a. Credit Card Evidence

Before trial, the government moved *in limine* to offer evidence of credit card transactions that Vidal processed at E&V Auto Sales using credit cards issued to Duarte after Felix submitted fraudulent applications on her behalf. The government argued that this evidence—offered in the form of testimony from Duarte—would show that Vidal placed charges that were not connected to any actual sales on Duarte's credit cards and gave her cash in exchange, withholding a portion for himself as a fee or commission. The district court ruled that this testimony was admissible as direct evidence of the charged conspiracy, or, in the alternative, under Rule 404(b) to show Vidal's motive, knowledge, and intent. On appeal, Vidal contends that the credit card evidence should have been excluded under Rule 403 and that it constituted a fatal variance from the indictment.

Rule 403 allows a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence is not unfairly prejudicial when it "d[oes] not involve conduct more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). We review a district court's decision to admit this evidence for abuse of discretion. *See United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021). In particular, "[i]n reviewing Rule 403 challenges, we accord great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence, mindful that it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (internal quotation marks and citation omitted). Thus, where a "district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice,

its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Vidal argues that the credit card evidence was unfairly prejudicial because it associated him with Felix and Duarte, connecting the credit card scheme with the auto loan scheme. We disagree. To be sure, the credit card evidence *did* associate Vidal with the charged conspiracy; "but evidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant *beyond* tending to prove the fact or issue that justified its admission into evidence." *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013) (alterations adopted) (internal quotation marks and citation omitted). When ruling on the government's motion *in limine*, the district court concluded that the credit card evidence was "highly probative," because "[i]t shed[] light on the relationships, the purpose, and the methods" of the charged conspiracy, which involved "the same financial institution, the same consumer, the same business of the defendant, all being used to generate cash for the consumer and cash for the defendant." App'x at 354–55. The district court further concluded that the evidence's probative value was not substantially outweighed by any danger of unfair prejudice, because the credit card evidence is "not inflammatory, compared to the underlying charges that the jury must concern itself with." App'x at 355. Moreover, the district court twice provided clear limiting instructions to the jury, emphasizing that these credit card transactions were not the transactions for which Vidal was on trial. Thus, we discern no abuse of discretion in the district court's analysis under Rule 403.[2]

---

[2] Vidal additionally argues that the credit card evidence, as presented at trial, was unfairly prejudicial because Duarte testified that Vidal "never gave [her] the full amount of money from the credit cards." App'x at 577. In particular, he asserts that this testimony is "evidence of uncharged criminal acts that could only be taken by the jury as evidence of Vidal's propensity." Appellant's Br. at 33. As a threshold matter,

8

Vidal also asserts that the admission of the credit card evidence constituted a fatal variance from the indictment. A variance occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003) (internal quotation marks and citation omitted). "[W]e will reverse on account of a variance only if it prejudices the defendant by infringing on the substantial rights that indictments exist to protect—to inform an accused of the charges against him so that he may prepare his defense and to avoid double jeopardy." *United States v. Kaplan*, 490 F.3d 110, 129 (2d Cir. 2007) (internal quotation marks and citations omitted). "Where the defendant has notice of the core of criminality to be proven at trial, we have permitted significant flexibility in proof without finding prejudice." *Id.* (internal quotation marks and citation omitted). Here, the credit card evidence was admitted as additional evidence of the charged auto loan conspiracy. Because the indictment gave notice that the conspiracy involved the retention of proceeds from fraudulent transactions at his car dealership using lenders' funds, and particularly in light of the jury instructions appropriately limiting consideration of the credit card evidence, Vidal cannot show that he was prejudiced by proof that the conspiracy used credit cards, in addition to checks, to fund the fraudulent scheme. *See Salmonese*, 352 F.3d at 622 ("[B]ecause [the indictment] gave [the defendant] fair and adequate notice that the conspiratorial scheme achieved its ultimate economic purpose through the conspirators' multiple sales of stripped securities and their receipt of proceeds through June 1996,

Vidal did not object to that portion of the testimony. In any event, that testimony was inextricably intertwined with Duarte's description of the purpose of the credit card transactions and her interactions with Vidal. Moreover, Duarte's testimony in this regard was no more inflammatory than the charged conduct, especially because she went on to testify that Vidal gave her "some [cash] on several occasions," as well as cars from his dealership for Duarte to sell. App'x at 578. Therefore, the district court was well within its discretion to find that this portion of Duarte's testimony—like the rest of her testimony regarding the credit card scheme—was admissible under Rule 403.

9

[defendant] cannot show that he was prejudiced by proof of a few uncharged proceed receipts after May 8, 1996."). Therefore, we find Vidal's variance argument unpersuasive.

### b. Coconspirator Statements

Before trial, the government moved *in limine* to admit statements made by Felix and certain auto loan borrowers as coconspirator statements under Rule 801(d)(2)(E). Vidal objected to the admission of that evidence without an evidentiary hearing under Rule 104(a) to determine whether a conspiracy existed, but the district court concluded that the government had made a sufficient showing in its proffer and that no pretrial hearing was necessary. The district court thus ruled that the coconspirator statements were admissible "subject to connection at trial . . . and review of the trial evidence." App'x at 48.

Under Rule 801(d)(2)(E), a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement under this rule, the district court must find by a preponderance of the evidence that: (1) "a conspiracy existed that included the defendant and the declarant"; and (2) "the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). "The decision as to whether [these] prerequisites have been met, like all other preliminary questions of admissibility, is to be made by the court." *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993). "We review a district court's admission of evidence under Rule 801(d)(2)(E) only for clear error." *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012).

On appeal, Vidal contends that the district court erred in admitting the coconspirator statements based on the government's proffer, without conducting the Rule 104(a) hearing that he

10

requested. We disagree. The district court stated that the proffer was sufficient "*subject* to connection at trial . . . and review of the trial evidence," but that it would "change [its] mind if the trial evidence does not line up with what I understand from the government's proffer." App'x at 48 (emphasis added). That approach is clearly permissible under our precedent. *See United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969) ("[T]he practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection[]' . . . when all the evidence is in . . . ."); *accord Tracy*, 12 F.3d at 1199 ("[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of those . . . prerequisites."). Moreover, the trial evidence ultimately aligned with the proffer, demonstrating that Vidal worked in concert with Felix and the other borrowers to obtain fraudulent proceeds from the lenders, and that the challenged statements were made during the course and in furtherance of that conspiracy. *See United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996) (holding that the district court may consider challenged statements in making the Rule 801(d)(2)(E) determination if supported by some independent corroborating evidence); *United States v. Perez*, 702 F.2d 33, 36 (2d Cir. 1983) ("[W]here the record indicates it to be appropriate, an implicit *Geaney* ruling can be inferred in the trial judge's decision to receive the evidence and to deny a directed verdict of acquittal on the conspiracy charge."). Thus, the district court did not err in admitting the coconspirator statements.

*       *       *

11

We have considered Vidal's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court